**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **JLR GLOBAL, LLC, JENNA RYAN REALTY, LLC, JENNA RYAN REAL ESTATE, LLC, FIRST PLACE REAL ESTATE, SELFLOVEU, LLC, THE JENNA RYAN SHOW, DOTJENNA, and JENNIFER RYAN,** | |
| **Plaintiffs,** | **Case No. 4:22-CV-559** |
| **v.** | |
| **PAYPAL INC.,** | |
| **Defendant.** | |

## MOTION TO COMPEL ARBITRATION AND TO DISMISS, OR IN THE ALTERNATIVE, TO STAY THIS ACTION PENDING ARBITRATION

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2, 3, and 4, Civil L.R. 7, and other applicable law, Defendant PayPal, Inc. requests the Court enter an order compelling Plaintiffs JLR Global, LLC, Jenna Ryan Realty, LLC, Jenna Ryan Real Estate, LLC, First Place Real Estate, SelfLoveU, LLC, The Jenna Ryan Show, DotJenna, and Jennifer Ryan (collectively, "Plaintiffs") to submit the claims alleged in their Complaint (ECF No. 9) to binding arbitration. Because each of the claims at issue here are subject to a valid and enforceable arbitration agreement, PayPal respectfully further asks the Court to dismiss this action or, in the alternative, to stay the action pending the outcome of the parties' arbitration proceeding.

Many other courts have enforced the very arbitration agreement at issue. *See Pickaree v. Kim*, No. CV H-22-901, 2022 WL 2317157, at *5 (S.D. Tex. June 28, 2022); *see also Cheng v. PayPal, Inc.*, Case No. 21-cv-03608-BLF, 2022 WL 126305 (N.D. Cal. Jan. 13, 2022); *see also Friends for Health: Supporting N. Shore Health Ctr. V. PayPal, Inc.*, No. 17 CV 1542, 2018 WL

2933608 (N.D. Ill. June 12, 2018). The result should be no different here. Under the FAA and the User Agreement, and to further judicial consistency and economy, PayPal respectfully requests that the Court order arbitration of Plaintiffs' claims in their entirety.

## I.     FACTUAL BACKGROUND

### A.  Plaintiffs' suit

Plaintiff Jennifer Ryan participated in the attack on the United States Capitol on January 6, 2021, and live streamed her participation on Facebook. *United States v. Jennifer Leigh Ryan*, Case No. 1:21-cr-00050 (CRC), ECF No. 48 (D.C. Dec. 28, 2021). During the live stream, Ryan also promoted her real estate business. *Id*. Days later on January 14, 2021, Ryan was criminally charged by complaint for violating several federal statutes. *Id.* Since the events of January 6, Ryan has voluntarily, openly, and regularly made use of social media to discuss her participation in the attack on the Capitol, her criminal charges, her views on whether she would ever be held accountable for her conduct, her subsequent plea agreement, and her sentencing to time in federal prison, among other things. As part of her heavy reliance on social media to publicize her views on these events, on January 21, 2021, Ryan took to Twitter requesting donations via PayPal to help pay legal fees and losses to her many businesses because of her involvement in the January 6 Capitol attack:[1]

---

[1]  Jenna Ryan's Twitter Page,  https://web.archive.org/web/20210122022320/https://twitter.com/dotjenna,  last accessed on August 16, 2022.



These donations were solicited on January 21, 2021, through a PayPal merchant account Ryan had

opened and used for many years under the name "Jenna Ryan Realty, LLC." Later that same day,

PayPal terminated two accounts: a business account opened by Plaintiffs Jennifer Ryan and Jenna

Ryan Realty, LLC in 2005 and a personal account opened by Jennifer Ryan in 2020.[2]

Ryan's conduct led to significant media interest. In response to multiple media questions

about Ryan's PayPal related activity, PayPal accurately disclosed that, because the fundraising

tweet above violated PayPal's Acceptable Use Policy, her PayPal accounts were terminated.[3]

Jennifer Ryan now contends that she and her many businesses[4] suffered damages as a result of

PayPal's "illegal disclosure of Ryan's personal financial information to news and media outlets."[5]

Compl. ⁋ 25, ECF No. 9. Plaintiffs assert claims for violation of the Electronic Fund Transfer Act,

15 U.S.C. § 1693(a)(9) ("EFTA"), tortious interference with prospective relations, violation of the

---

[2] Ex. A (Potter Decl.) ⁋ 24.
[3] *Id.*
[4] According to the Complaint, Plaintiffs JLR Global, LLC, Jenna Ryan Realty, LLC, Jenna Ryan Real, Estate, LLC, First Place Real Estate, SelfLoveU, LLC, The Jenna Ryan Show, and dotJenna are all businesses operated by Jennifer Ryan. Compl. ⁋⁋ 8, ECF No. 9.
[5] Plaintiffs have filed parallel actions against other entities similarly claiming that disclosures related to Ryan's January 6 activities and subsequent conduct damaged their business prospects. *See, e.g.*, Cause No. 22-5090-431 *Jenna Ryan et al. v. CBS 11 DFW et al.* (pending in the Denton County District Court); Cause No. 22-5230-393 *Jenna Ryan et al. v. Candace Evans Real Est. Agent et al.* (pending in the Denton County District Court).

Deceptive Trade Practices Act ("DTPA"), invasion of privacy, and intentional infliction of emotional distress. Compl., ECF No. 9.

**B. The User Agreement**

Defendant PayPal provides digital payment services that allow its users to buy, sell, and send money securely worldwide.[6] Plaintiffs Jenna Ryan Realty, LLC and Jennifer Ryan (collectively, "Signatory Plaintiffs") first entered into a User Agreement with PayPal in 2005, with the email addresses jennaryanrealty@gmail.com and selfloveuonline@gmail.com.[7] To open their account, both Signatory Plaintiffs had to complete the registration process, which requires a user's affirmative acceptance of the User Agreement setting forth the terms and conditions that govern the use of PayPal's services.[8] No user may register for a PayPal account without consenting to the terms and conditions of the User Agreement in operation when they sign up.[9] Jennifer Ryan admits that she completed this process for her 2005 account. Compl. ¶ 15, ECF No. 9. In addition, Jennifer Ryan created a second PayPal account, and consented to the User Agreement, and any amendments thereto, on February 22, 2020.[10]

When Signatory Plaintiffs created and registered their PayPal accounts, PayPal required them to accept the User Agreement by checking a box confirming consent thereto and acceptance thereof on the online registration form and clicking a button stating, "Agree and Create Account" on the registration form presented online.[11] Before accepting the User Agreement, Signatory Plaintiffs were given the opportunity to review the terms of the User Agreement, either through a scroll box on the registration page or via a hyperlink contained within the acceptance prompt,

---

[6] Ex. A (Potter Decl.) ¶ 3.
[7] *Id*. ¶ 18.
[8] *Id.* ¶ 4.
[9] *Id.*
[10] *Id.* ¶ 19.
[11] *Id.* ¶ 5.

which would take them to a separate, public webpage hosted by PayPal, and containing the User Agreement in full.[12] If a potential user chooses not to accept the terms of the User Agreement, the potential user cannot complete the registration process or create a PayPal account.[13]

PayPal regularly updates the terms and conditions of its User Agreement.[14] At all relevant times, PayPal's User Agreements have authorized PayPal to amend the operative terms at any time by posting new terms on PayPal's website.[15] All PayPal users, including Signatory Plaintiffs, accept and agree to be bound by any such amendments by continuing to use PayPal's services.[16] The User Agreement also provides: "[b]y continuing to use our services after any changes to this user agreement, you agree to abide and be bound by those changes. If you do not agree with any changes to this user agreement, you may close your account."[17] As stated in the User Agreement, PayPal provides each user with written notice of all revisions to the User Agreement or related policy changes.[18] Notices summarizing the significant changes being made to the User Agreement, or even the amended terms themselves, are posted as a "Policy Update" on PayPal's website.[19]

This method of renewing the User Agreement between PayPal and its users through periodic updates which users can either accept or reject through use of PayPal's services makes particular sense given that the User Agreement has no fixed term. From the outset, Signatory Plaintiffs were not obligated to use PayPal's services for any period of time and could terminate the relationship going forward at their sole discretion, and for any or no reason.[20] Signatory

---

[12] *Id.*
[13] *Id.* ¶ 9.
[14] *Id.* ¶ 10.
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*

Plaintiffs accepted in precisely the manner agreed upon by the Parties the terms of several User Agreement versions during their approximately 16-year relationship with PayPal.

Among other changes to its User Agreement, PayPal updated the language in the User Agreement's mandatory agreement to arbitrate all disputes with PayPal and added an opt out provision effective November 1, 2012 ("Agreement to Arbitrate").[21] At all relevant times before the adoption of the 2012 version of the Agreement to Arbitrate (including on July 22, 2005), PayPal's User Agreement included some form of alternative dispute resolution provision.[22] The Policy Update containing information about the addition of the Agreement to Arbitrate to the User Agreement was posted on PayPal's website and contained the full text of the Agreement to Arbitrate going into effect on November 1, 2012.[23] A Notice about the Agreement to Arbitrate Policy Update was also emailed to all active PayPal users.[24]

### C.  The Agreement to Arbitrate

The current User Agreement includes the following Agreement to Arbitrate terms:

> You and PayPal each agree that any and all disputes or claims that have arisen or may arise between you and PayPal, including without limitation federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved exclusively through final and binding arbitration, rather than in court, except that you may assert claims in small claims court, if your claims qualify and so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis. This Agreement to Arbitrate is intended to be broadly interpreted. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate.[25]

---

[21] *Id.* ¶ 11.
[22] *Id.*
[23] *Id.*
[24] *Id.* ¶ 12.
[25] *Id.* The quoted language is from the November 9, 2020 version of the User Agreement, effective at the time the Signatory Plaintiffs' accounts were terminated. Versions of the User Agreement in effect when the Signatory Plaintiffs created their account(s) and when those accounts were limited are attached to the Declaration of Jill Potter, Exhibit A to this Motion.

6

The second paragraph of the User Agreement advises users in conspicuous, bold blue text that the terms "include an agreement to resolve disputes by arbitration on an individual basis"; the bold blue text also provides a hyperlink directly to the Agreement to Arbitrate.[26]

At all times since November 1, 2012, the Agreement to Arbitrate has contained an opt out provision allowing any user who did not consent to its terms to "opt out" by mailing notice to PayPal's Litigation Department within 30 days of accepting a User Agreement for the first time.[27] PayPal users who had accepted the User Agreement before the introduction of the Agreement to Arbitrate could similarly "opt out" by mailing notice to PayPal's Litigation Department within 30 days of the effective date of the Agreement to Arbitrate, i.e. by December 1, 2012.[28] If a user opts out of the Agreement to Arbitrate, all other parts of the User Agreement continue to apply; a user's account will not be closed simply because the user avails themselves of the opt out provision.[29] This opt out procedure requiring the opt out form to be submitted to PayPal's Litigation Department within 30 days of a user first accepting the User Agreement has remained unchanged in PayPal's User Agreement to the present date.[30]

Additionally, at all times since November 1, 2012, the Agreement to Arbitrate has included a provision regarding future amendments to the Agreement to Arbitrate, specifying that any such amendments would apply to all disputes or claims governed by the Agreement to Arbitrate that have arisen or may arise between the user and PayPal, save for any claims filed before the effective date of the amendment.[31] This provision is in addition to terms in the User Agreement similarly authorizing PayPal to amend the operative terms.[32] Any time PayPal updated the terms of the

---

[26] *Id.* ¶ 14.
[27] *Id.* ¶ 15.
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.* ¶ 16.
[32] *Id.*

Agreement to Arbitrate after November 1, 2012, PayPal posted advance notice of the changes to the User Agreement on its website.[33] PayPal also provided advance notice of the changes to its active users via email notification.[34]

The User Agreement allows PayPal users to opt out of the Agreement to Arbitrate by providing written notice to PayPal within 30 days of the account opening.[35] PayPal maintains records of all users who have opted out of the Agreement to Arbitrate.[36] The Signatory Plaintiffs did not provide any notice to PayPal that they would opt out of the Agreement to Arbitrate.[37]

Despite the express language in the Agreement to Arbitrate, Plaintiffs filed suit in the District Court of Denton County, Texas on June 8, 2022. Notice of Removal, ECF No. 1. PayPal removed the matter to this Court on July 2, 2022. *Id.* Plaintiffs' claims arise from Jennifer Ryan's breach of the Authorized Use Policy and PayPal's subsequent termination of the Signatory Plaintiffs' User Agreement. Because all of Plaintiffs' claims are covered by the Agreement to Arbitrate, they should be compelled to arbitration.

## II.      ARGUMENT AND AUTHORITIES

The FAA governs arbitration agreements arising out of transactions involving interstate commerce and dictates that they "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The User Agreement here unequivocally involves interstate commerce as Plaintiffs (companies and an individual residing in Texas) used the online payment services of PayPal (a Delaware corporation) to exchange money with other users across the United States. The User Agreement also expressly

---

[33] *Id.*
[34] *Id.*
[35] *Id.* ¶ 20.
[36] *Id.*
[37] *Id.*

provides that the FAA "governs the interpretation and enforcement of this Agreement to Arbitrate."

The Supreme Court has stated that the FAA "declares a national policy favoring arbitration of claims that parties contract to settle in that manner." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (cleaned up). The Fifth Circuit prescribes "two analytical steps" in determining whether to enforce an arbitration agreement. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). The first [step] is contract formation—whether the parties entered into any arbitration agreement at all." *Id.* (emphasis in original). This question is governed by state law principles of contract formation and interpretation. *Id.* at 202. "The second [step] involves contract interpretation to determine whether this claim is covered by the arbitration agreement." *Id.* 201 (emphasis in original). The second step is also a matter of law for the court to decide. *Id.* If an arbitration agreement is found, "there is a presumption that their disputes will be deemed arbitrable unless it is clear that the arbitration clause has not included them." *Polyflow, LLC v. Specialty RTP, LLC*, 993 F.3d 295, 303 (5th Cir. 2021) (cleaned up). Thus, "the party resisting arbitration shoulders the burden of proving that the dispute is not arbitrable." *Id.* (cleaned up). When the court determines that both steps are satisfied, Congress directs the court to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3.

**A.  The Agreement to Arbitrate is Valid and Enforceable.**

As an overarching principle, arbitration agreements governed by the FAA are presumed to be valid and enforceable. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-227 (1987). The FAA also "allows parties to an arbitration contract considerable latitude to choose what law governs some or all of its provisions." *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 53-54 (2015). Consistent with this principle, the User Agreement includes a Delaware choice-of-law provision, which

governs the interpretation and validity of the User Agreement.[38] *See Ebner v. Fin. Architects, Inc.*, 763 F. Supp. 2d 697, 700 (D. Del. 2011) ("When an agreement contains both a choice-of-law clause and an arbitration clause, the [...] court will apply the substantive law of the state named in the choice of law clause").

      1.  <u>The Agreement to Arbitrate is part of a valid User Agreement</u>.

Delaware (like Texas) routinely enforces agreements of the kind at issue, i.e., "online agreement[s] that require[] a 'webpage user [to] manifest assent to the terms of a contract by clicking an 'accept' button in order to proceed." *Doe v. Massage Envy Franchising, LLC*, No. CV S20C-05-005RFS, 2020 WL 7624620, at *2 (Del. Super. Ct. Dec. 21, 2020) (citation omitted); *see Cheng*, 2022 WL 126305, at *3 (enforcing Agreement to Arbitrate under Delaware law); *Bongalis-Royer v. RJ Worldwide, LLC*, No. 4:14-CV-330, 2015 WL 12778846, at *5 (E.D. Tex. July 16, 2015) (recognizing the enforceability of clickwrap agreements in Texas).

Both Signatory Plaintiffs consented to the terms of the User Agreement in consideration of opening their PayPal accounts.[39] Before doing so, these Plaintiffs were presented with the agreement and required to affirmatively check a box confirming that they read and agreed to the User Agreement and click a button labeled "Agree and Create Account."[40] Plaintiffs were afforded the opportunity to review the User Agreement via a scroll box and/or hyperlink at the time of registration and affirmed they had reviewed the User Agreement.[41] The User Agreement also preserved PayPal's right to amend its terms in the future.[42] Plaintiffs were "on notice that

---

[38] Ex. A-5 (Nov. 9, 2020 User Agreement).
[39] Ex. A (Potter Decl.) ¶ 5.
[40] *Id.*
[41] *Id.*
[42] *Id.* ¶ 10.

[they were] modifying [their] legal rights" and manifested their assent by checking a box and clicking a button. *Cheng*, 2022 WL 126305, at *4.

Each of the Signatory Plaintiffs also had the right and opportunity to—but did not—opt out of the Agreement to Arbitrate.[43] *See Mikkilineni v. PayPal, Inc.*, C.A. No. N19C-05-123 PRW CCLD, 2021 WL 2763903, *11 (Del. Super. Ct. Jul. 1, 2021) (compelling arbitration where plaintiff could have opted out); *Andre v. Dollar Tree Stores, Inc.*, Civ. Action No. 18-142-MN-CJB, 2019 WL 2617253, *10 (D. Del. June 26, 2019) (opt out procedure supported validity of arbitration agreement).[44] Instead, Signatory Plaintiffs continued to use their PayPal accounts, thereby manifesting their intent to be bound by the bilateral Agreement to Arbitrate—including all amendments—which provides that "any and all disputes or claims that have arisen or may arise between you and PayPal, … shall be resolved exclusively through final and binding arbitration … on an individual basis."[45]

   2. That PayPal updated its terms does not alter the enforceability of the Agreement to Arbitrate.

The enforceability of the Agreement to Arbitrate is not invalidated simply because Signatory Plaintiffs accepted the User Agreement at varying times. It is well settled that individuals, and commercial entities like all but one of the Plaintiffs here, will be bound to arbitration agreements of which they are notified, even if the operative agreement did not appear among the original terms. *See Mellow v. Dep't Stores Nat'l Bank*, No. SA-20-CV-00549-XR, 2020

---

[43] *Id.* ¶¶ 15, 20.
[44] Earlier this year, a California District Court found the Agreement to Arbitrate at issue here to be valid. *See Cheng*, Case No. 21-cv-03608-BLF, 2022 WL 126305, *3 ("The Court agrees with PayPal that the arbitration agreement is valid and enforceable."). Upholding the Agreement to Arbitrate in this case is wholly consistent with the Court's prior decision and avoids potentially conflicting rulings. *See Ponkey v. LLR, Inc.*, No. 5:21-CV-00518-AB-SHK, 2021 WL 4595801, at *4 (C.D. Cal. Aug. 5, 2021) ("Because this case involves the same arbitration provision as in [a related case], the Court finds no reason to depart from the holding in [the related case] that a valid arbitration agreement exists between the parties here.").
[45] Ex. A (Potter Decl.) ¶ 14; Ex. A-5 (Nov. 9, 2020 User Agreement).

WL 10056311, at *4 (W.D. Tex. Dec. 1, 2020) (determining continued use of service, failure to opt out after receiving notice of updated terms including arbitration provision demonstrated acceptance thereof); *Edelist v. MBNA Am. Bank*, 790 A.2d 1249, 1257-58 (Del. 2001) (finding bank could unilaterally add arbitration clause after notifying cardholder of same and providing opportunity to opt out).

At all relevant times, the User Agreement has included a change of terms provision permitting PayPal to update terms in the future and providing that a user's continued use of the platform constitutes acceptance of amended terms.[46] PayPal exercised its right to amend the User Agreement in 2012 to update the Agreement to Arbitrate.[47] PayPal posted a Policy Update with information about and the full text of the Agreement to Arbitrate on its website one month before its effective date.[48] PayPal also emailed notice of the Policy Update detailing the Agreement to Arbitrate, including the opt out provision, in bold and/or underline font to all active PayPal users— including Signatory Plaintiffs.[49] Signatory Plaintiffs received the notice on August 24, 2012.[50] After being put on specific notice of the 2012 updates to the Agreement to Arbitrate, Signatory Plaintiffs did not exercise their right to opt out of the Agreement to Arbitrate, but instead continued using their accounts, and opened another account later.[51] *See Mellow*, No. SA-20-CV-00549-XR, 2020 WL 10056311, at *4.

With respect to a user's acceptance of arbitration terms adopted after the initial agreement, *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.* is particularly instructive, as it involves the enforcement of an Agreement to Arbitrate in a scenario almost identical to this one.

---

[46] Ex. A (Potter Decl.) ¶¶ 10-11, 14.
[47] *Id.* ¶ 14.
[48] *Id.* ¶ 11.
[49] *Id.* ¶ 12.
[50] *Id.* ¶ 18.
[51] *Id.* ¶¶ 18-19.

No. 17 CV 1542, 2018 WL 2933608, *6 (N.D. Ill. June 12, 2018). In that case, the Northern District of Illinois compelled arbitration where the PayPal user had registered her account and accepted the User Agreement before PayPal's 2012 version of the Agreement to Arbitrate went into effect. *Id.* at *5-6. That user, like Signatory Plaintiffs, had received sufficient notice of the Policy Update (including via email) and was given the opportunity to opt out, but did not do so. *Id.* at *6. The court determined that the plaintiffs were thus bound by the arbitration agreement. *Id.* Accordingly, the Agreement to Arbitrate is equally enforceable, requiring arbitration of Plaintiffs' claims.

### B. Non-Signatories to the Agreement are bound by the arbitration clause under direct-benefits estoppel.

"Direct benefits estoppel applies when a nonsignatory knowingly exploits the agreement containing the arbitration clause." *Antonio Leonard TNT Prods., LLC v. Goossen-Tutor Promotions, LLC*, 47 F. Supp. 3d 500, 514 (S.D. Tex. 2014); *see also Griswold v. Coventry First LLC*, 762 F.3d 264, 272 (3d Cir. 2014). In determining whether direct-benefits estoppel applies, "[t]he keys are whether the nonsignatory demanded and received substantial and direct benefits under the contract containing the arbitration clause, by suing the signatory under that contract or otherwise; the relationship between the claims to be arbitrated and the contract; and whether equity prevents the nonsignatory from avoiding the arbitration clause that was part of that contract." *Id.*; *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010) ("A non-signatory can 'embrace' a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract."); *Griswold*, 762 F.3d at 272. Importantly, a court may compel arbitration against a non-signatory who has sued the signatory, even if the suit is not based on the contract containing the arbitration

13

clause. *Wood v. PennTex Res., L.P.*, 458 F. Supp. 2d 355, 369 (S.D. Tex. 2006), *aff'd sub nom.* 322 F. App'x 410 (5th Cir. 2009).

Here, Plaintiffs JLR Global, LLC, Jenna Ryan Real Estate, LLC, First Place Real Estate, SelfLoveU, LLC, The Jenna Ryan Show, and DotJenna (collectively, the "Non-Signatory Plaintiffs") are entities operated by signatory Jennifer Ryan and each seek damages from PayPal arising solely out of PayPal's allegedly improper disclosure to news outlets that it terminated the Signatory Plaintiffs' account. *See generally* Compl., ECF No. 9. The Non-Signatory Plaintiffs contend that because PayPal announced that it terminated the Signatory Plaintiffs' User Agreement, an "avalanche" of ***other entities*** identified Non-Signatory Plaintiffs as the targets of "cancel culture" causing the Non-Signatory Plaintiffs to lose millions of dollars in business. *See, e.g.*, Compl. ¶¶ 25, 41-49, ECF No. 9. Leaving aside the facial invalidity of these claims, by their very nature, they all are based on PayPal's termination of the Signatory Plaintiffs' PayPal accounts and disclosure of such termination, and so each directly seeks to benefit from the User Agreement as the fulcrum of the business relationship between Signatory Plaintiffs' and PayPal. As a result, the Non-Signatory Plaintiffs are bound by the arbitration clause. *Griswold*, 762 F.3d at 272.

### C.  The broad scope of the Agreement to Arbitrate encompasses this dispute.

Under the FAA, the scope of an arbitration agreement is governed by federal substantive law. *Graves v. BP Am., Inc.*, 568 F.3d 221, 222 (5th Cir. 2009). And the FAA requires that any doubts about the scope of arbitrable issues should be resolved in favor of arbitration. *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000). Both the U.S. Supreme Court and the Fifth Circuit upheld arbitration provisions containing expansive language. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (upholding provision requiring arbitration of "all disputes between the parties"); *Cheng*, 2022 WL 126305, at *4-5 (allegations about AUP violations and

liquidated damages within scope of Agreement to Arbitrate); *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1068 (5th Cir. 1998) (enforcing clause requiring arbitration for "any dispute arising out of or in relation to or in connection with" the contract at issue). If the allegations underlying the claims even "touch matters" covered by the agreement, those claims are within the scope of the arbitration clause. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 n.13 (1985). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). "[O]nly the most forceful evidence of a purpose to exclude [a dispute] from arbitration can prevail." *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 650 (1996) (citation omitted).

The Agreement to Arbitrate states that "any and all disputes or claims that have arisen or may arise between" each Signatory Plaintiff "including without limitation federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved exclusively through final and binding arbitration, rather than in court."[52] Moreover, it explicitly provides that "it is intended to be broadly interpreted."[53] The Agreement to Arbitrate is not tethered to disputes arising out of a particular account or transaction, but encompasses all claims stemming from the relationship between the user and PayPal.

This lawsuit is a dispute between PayPal and each Plaintiff as a result of the Signatory Plaintiffs' improper use of PayPal's services and PayPal's resultant termination of those accounts. Compl., ECF No. 9. The Claims are statutory, i.e., violations of EFTA and DTPA, as well as based in tort, i.e., tortious interference with prospective relations, invasion of privacy,

---

[52] Ex. A (Potter Decl.) ₱ 14.
[53] *Id.*

and intentional infliction of emotional distress. Compl. ℙℙ 27-82, ECF No. 9. Each cause of action turns on the foundational allegation that PayPal violated the User Agreement by failing to keep Jennifer Ryan's "private personal financial information private." *Id.* ¶¶ 25, 27-82. Plaintiffs' claims thus fall squarely within the scope of the Agreement to Arbitrate.

### D.  The Court should dismiss this action after compelling arbitration.

The FAA directs that once the court is satisfied that an issue is arbitrable, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. "Courts have interpreted the provision, however, to permit dismissal if all issues raised in an action are arbitrable and must be submitted to arbitration." *Sagal v. First USA Bank, N.A.*, 69 F. Supp. 2d 627, 632 (D. Del. 1999), *aff'd*, 254 F.3d 1078 (3d Cir. 2001); *Pickaree v. Kim*, No. CV H-22-901, 2022 WL 2317157, at *4 (S.D. Tex. June 28, 2022) ("When, as here, all the claims are covered by a valid arbitration agreement, the court should dismiss, not stay."). Plaintiffs' claims are subject to the arbitration clause in the User Agreement and thus dismissal is appropriate.

### III.    CONCLUSION

Plaintiffs' claims alleged in the Original Petition are subject to the valid and enforceable arbitration agreement within the User Agreement. PayPal requests that the Motion be granted, the Court enter an order compelling all Plaintiffs' claims to arbitration and dismissing this action. PayPal requests any other relief the Court deems just and proper.

16

Respectfully Submitted,

*/s/ Robert C. Vartabedian*
Robert C. Vartabedian
Texas Bar No. 24053534
Robert.Vartabedian@alston.com
Alix D. Allison
Texas Bar No. 24086261
Alix.Allison@alston.com

Alston & Bird LLP
301 Commerce, Ste. 3635
Fort Worth, TX  76102
Telephone: 214-922-3400
Facsimile: 214-922-3839

**Attorneys for Defendant**

## CERTIFICATE OF CONFERENCE

I hereby certify that on August 16, 2022, I conferred with counsel for Plaintiffs in accordance with Local Rule CV-7(h). Plaintiffs are opposed to the relief sought in this Motion. Therefore, discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Robert C. Vartabedian*
Robert C. Vartabedian

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2022, I caused to be served true and correct copies of the foregoing Notice of Removal by filing such notice with the Court's CM/ECF system.

*/s/ Robert C. Vartabedian*
Robert C. Vartabedian

LEGAL02/42105577v1