EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| **JLR GLOBAL, LLC, JENNA RYAN REALTY, LLC, JENNA RYAN REAL ESTATE, LLC, FIRST PLACE REAL ESTATE, SELFLOVEU, LLC, THE JENNA RYAN SHOW, DOTJENNA, and JENNIFER RYAN,**<br><br>    Plaintiffs,<br><br>v.<br><br>**PAYPAL INC.,**<br><br>    Defendant. | Case No. 4:22-CV-559 |

## DECLARATION OF JILL POTTER

STATE OF NEBRASKA § 
§
COUNTY OF SARPY §

Pursuant to 28 U.S.C. § 1743, I, Jill Potter, declare from my personal knowledge that the following facts are true:

1.  "My name is Jill Potter. I am over 18 years of age and reside in the State of Nebraska. I am an employee of PayPal, Inc. ("PayPal"), the defendant in the above-captioned matter. I submit this Declaration in support of PayPal's Motion to Compel Arbitration. Except where my knowledge is based on my review of PayPal's records and documents regularly maintained in the ordinary course of business, I have personal knowledge of the facts in this declaration and could competently testify to them if I am called as a witness.

2.  I am employed by PayPal as Legal Specialist. My job duties include, among other things, accessing and analyzing PayPal user account records to confirm information regarding

PayPal users' account activity. I have personally reviewed the user records for Plaintiffs Jenna Ryan Realty, LLC's and Jennifer Ryan's (collectively, "Signatory Plaintiffs") PayPal accounts. I am also familiar with the process that prospective PayPal users currently go through to register to use PayPal's services, as well as the process that existed when Signatory Plaintiffs registered their accounts.

3. Defendant PayPal provides digital payment services that allow its users to buy, sell, and send money securely worldwide.

4. To create a PayPal account, the individual or business creating the account must complete a registration process. Each potential user—whether registering for an individual or business account—must accept the terms of the User Agreement, which provides the terms and conditions governing the use of PayPal's services and the relationship between PayPal and its users. No user may register for a PayPal account without agreeing to the terms and conditions of the User Agreement that is in operation at the time the user signs up.

5. At the times each Signatory Plaintiff created and registered their PayPal accounts, PayPal required potential users to accept the User Agreement by checking a box confirming consent thereto and/or acceptance thereof on the online registration form and clicking a button stating "Agree and Create Account" on the registration form presented online. Before accepting the User Agreement, potential users were given the opportunity to review the terms of the User Agreement, either through a scroll box on the registration page or via a hyperlink contained within the acceptance prompt, which would take the potential user to a separate, public webpage hosted by PayPal, and containing the User Agreement in full.

6. Below is an example of a standard prompt that potential users opening business accounts have been shown during the registration process, and the phrase "User Agreement" in

bold blue font represents a hyperlink that—when clicked—will direct users to the complete terms and conditions of the current PayPal User Agreement, which is always publicly available on PayPal's website.



7. The same prompt is available to those seeking to open a personal account.



**Declaration of Jill Potter – Page 3**
LEGAL02/42097742v1

8.    PayPal also makes the current and operative User Agreement available to all users and to the public through a "Legal" link that appears on every page of the PayPal.com website.

9.    Potential PayPal users cannot complete the registration process or create a PayPal account without accepting the User Agreement's terms.

10.   PayPal regularly updates the terms and conditions of its User Agreement. At all relevant times, PayPal's User Agreements have authorized PayPal to amend the operative terms at any time by posting new terms on PayPal's website. All PayPal users accept and agree to be bound by any such amendments by continuing to use PayPal's services. The User Agreement further provides: "[b]y continuing to use our services after any changes to this user agreement, you agree to abide and be bound by those changes. If you do not agree with any changes to this user agreement, you may close your account." As set forth in the User Agreement, PayPal provides each user with written notice of all revisions to the User Agreement or related policy changes. Notices summarizing the significant changes being made to the User Agreement, or even the amended terms themselves, are posted as a "Policy Update" on PayPal's website. A true and correct copy of excerpts of the webpage listing past Policy Updates and revisions to the User Agreement beginning from 2012 is attached hereto as **Exhibit 1.** For substantive amendments, PayPal also sends an email to its users notifying them in advance of the changes that will be made to the User Agreement.

11.   Among other changes to its User Agreement, PayPal updated the language in the User Agreement's mandatory agreement to arbitrate all disputes with PayPal and added an opt out provision effective November 1, 2012 ("Agreement to Arbitrate"). At all relevant times prior to the adoption of the 2012 version of the Agreement to Arbitrate (including on July 22, 2005), PayPal's User Agreement contained some form of alternative dispute resolution provision. The

**Declaration of Jill Potter – Page 4**
LEGAL02/42097742v1

Policy Update containing information about the addition of the Agreement to Arbitrate to the User Agreement was posted on PayPal's website and contained the full text of the Agreement to Arbitrate going into effect on November 1, 2012. A true and correct copy of the Policy Update posted on PayPal's website one month prior to the November 1, 2012 effective date of the Agreement to Arbitrate is attached hereto as **Exhibit 2.**

12. A Notice about the Agreement to Arbitrate Policy Update was also emailed to all active PayPal users. A true and correct copy of a sample of the Notice of Policy Update email is attached hereto as **Exhibit 3.**

13. A true and correct copy of the User Agreement effective November 1, 2012, which was also posted to PayPal's website, is attached hereto as **Exhibit 4.**

14. The current User Agreement includes the following Agreement to Arbitrate terms:

> You and PayPal each agree that any and all disputes or claims that have arisen or may arise between you and PayPal, including without limitation federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved exclusively through final and binding arbitration, rather than in court, except that you may assert claims in small claims court, if your claims qualify and so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis. This Agreement to Arbitrate is intended to be broadly interpreted. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate.

A true and correct copy of the current version of the User Agreement effective November 9, 2020 is attached hereto as **Exhibit 5**. The second paragraph of the User Agreement advises users in conspicuous, bold blue text that the terms "include an agreement to resolve disputes by arbitration on an individual basis"; the bold blue text also provides a hyperlink directly to the Agreement to Arbitrate.

**Declaration of Jill Potter – Page 5**
LEGAL02/42097742v1

15.     At all times since November 1, 2012, the Agreement to Arbitrate has contained an opt out provision allowing any user who did not consent to its terms to "opt out" by mailing notice to PayPal's Litigation Department within 30 days of accepting a User Agreement for the first time. PayPal users who had accepted the User Agreement before the introduction of the Agreement to Arbitrate could similarly "opt out" by mailing notice to PayPal's Litigation Department within 30 days of the effective date of the Agreement to Arbitrate, i.e. by December 1, 2012. If a user opts out of the Agreement to Arbitrate, all other parts of the User Agreement continue to apply; a user's account will not be closed simply because the user avails themselves of the opt out provision. This opt out procedure requiring the opt out form to be submitted to PayPal's Litigation Department within 30 days of a user first accepting the User Agreement has remained unchanged in PayPal's User Agreement to the present date.

16.     Additionally, at all times since November 1, 2012, the Agreement to Arbitrate has included a provision regarding future amendments to the Agreement to Arbitrate, specifying that any such amendments would apply to all disputes or claims governed by the Agreement to Arbitrate that have arisen or may arise between the user and PayPal, save for any claims filed prior to the effective date of the amendment. This provision is in addition to terms in the User Agreement similarly authorizing PayPal to amend the operative terms, as described more fully at Paragraph 10, above.

17.     Any time PayPal updated the terms of the Agreement to Arbitrate after November 1, 2012, PayPal posted advance notice of the changes to the User Agreement on its website. PayPal also provided advance notice of the changes to its active users via email notification.

18.     PayPal's records indicate that on July 22, 2005, Signatory Plaintiffs created and registered a PayPal account, with the e-mail addresses jennaryanrealty@gmail.com and

selfloveuonline@gmail.com, and consented to the User Agreement under the username "jennifer ryan" with business information "Jenna Ryan Realty." As part of the account registration process, Jennifer Ryan provided her date of birth and social security number. The Signatory Plaintiffs continued to use that PayPal account as active users, including during the time that PayPal emailed the Policy Update regarding the Agreement to Arbitrate to all active PayPal users. PayPal emailed the notice to the Signatory Plaintiffs on August 24, 2012. A true and correct copy of the PayPal User Agreement in effect at the time Signatory Plaintiffs created this PayPal account on July 22, 2005 is attached hereto as **Exhibit 6.** The PayPal User Agreement in effect at the time Ms. Ryan created her first PayPal account on July 22, 2005 included an alternative dispute resolution provision.

19. According to PayPal's records, Ms. Ryan created and registered one other PayPal account since opening the 2005 account. Specifically, on February 22, 2020, Ms. Ryan created and registered a PayPal account, and accepted the User Agreement, using a "Jenna Ryan" username with the same social security number that she used to open her initial account. PayPal's records show that Ms. Ryan accepted the then-operative User Agreement, including the Agreement to Arbitrate, at the time she registered this additional account. The User Agreement that was in effect on February 22, 2020, to which Ms. Ryan agreed, is attached hereto as **Exhibit 7.**

20. As previously noted, the User Agreement allows PayPal users to opt out of the Agreement to Arbitrate by providing written notice to PayPal within 30 days of the account opening. PayPal maintains records of all users who have opted out of the Agreement to Arbitrate. I have confirmed that neither of the Signatory Plaintiffs ever provided any notice to PayPal that they would opt out of the Agreement to Arbitrate.

21. The User Agreement identifies certain "Restricted Activities" that all users agree not to do on PayPal's payment platform, including, but not limited to activities that violate PayPal's Acceptable Use Policy ("AUP").

22. PayPal's AUP is intended to prevent harmful transactions from being processed through its platform. Such transactions are prohibited by PayPal because of, among other things, the brand damage PayPal incurs by being associated with unlawful or fraudulent transactions, the potential legal exposure PayPal faces from regulatory agencies, and the potential and actual assessments PayPal faces as a result of processing these transactions through its platform.

23. PayPal's AUP provides that users may not use the PayPal service for, among other things, transactions involving activities that violate any law, statute, ordinance, or regulation. The AUP is incorporated by reference in conspicuous, blue bolded text in the second paragraph of the User Agreement, which also includes a hyperlink directly to the AUP. A true and correct copy of PayPal's current AUP is attached hereto as **Exhibit 8.**

24. PayPal terminated the Signatory Plaintiffs' accounts on January 21, 2021 after Jennifer Ryan violated the AUP.

Further, Declarant sayeth not."

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 25, 2022.

DocuSigned by:
*Jill Potter*
7F7689327C044A5...
Jill Potter