IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| JLR GLOBAL, LLC, et al.<br><br>    Plaintiffs,<br><br>  v.<br><br>PAYPAL, INC.,<br><br>    Defendant. | CIVIL ACTION NO.: 4:22-cv-559<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION AND TO DISMISS**

Plaintiffs file their response ("Response") in Opposition to Defendant PayPal, Inc.'s ("PayPal" or "Defendant") Motion to Compel Arbitration and to Dismiss (ECF No. 10)("Motion"). In support of their Response, Plaintiffs respectfully show the following.

**I.    INTRODUCTION AND BACKGROUND**

The vast majority of the Motion concerns the contents of an alleged "Agreement to Arbitrate"[1] – while failing to properly assert or support that such an agreement exists, is enforceable, or applicable to the claims of the Plaintiffs' complaint (ECF No. 9, filed August 9, 2022) ("Complaint") – incorporated herein by reference. To the extent that the Motion offers any support at all for its contentions, that support is insufficient and improper. Proper evaluation and analysis of the facts of *this case* reveals that – for the reasons explained in detail, below – the Defendant's treasured "Agreement to Arbitrate" is unenforceable against all of the Plaintiffs.

Plaintiffs respectfully submit that this Court should deny the Motion for, at least, the following reasons: 1) Defendant extinguished its ability to force arbitration by repudiating any agreement it had with two of the Plaintiffs; 2) the Defendant's illegal Press Release – the *actual*

---

[1] *See, e.g.,* Motion at pp. 6-8, 11-15, (Also referred to as "Arbitration Agreement," *Id*. at p.1).

1

basis for the claims of the Complaint – falls outside the scope of any such agreement; and 3) several Plaintiffs are completely outside the scope of any arbitration clause, and therefore an not subject to arbitration for their claims against Defendant.

## II. LEGAL STANDARDS

### A. Motions to Compel Arbitration.

When considering a motion to compel arbitration, a Court must first determine if the parties entered into any arbitration agreement at all. *Wheeler v. Plano Arbor Hills LLC*, 2020 U.S. Dist. LEXIS 215385 at *4 (E.D.Tex. 2020) (citing *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016)). This first determination pertains only to contract formation – in other words, did the parties form a valid agreement to arbitrate some set of claims? *Id*., at *4 (citing *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017)). This initial question is for the Court. *Id.,* at *4. To determine whether there is a valid agreement to arbitrate, the Court applies "ordinary state-law principles that govern the formation of contracts." *Id*., at *4 (quoting *Webb v. Investacorp, Inc*., 89 F.3d 252, 258 (5th Cir. 1996)).

The burden of proof is on the party seeking to enforce the arbitration agreement. *Psara Energy, Ltd. v. Space Shipping, Ltd.*, 427 F. Supp. 3d 858, 861-863 (E.D.Tex. 2018).

"If the Court finds that there is a valid agreement to arbitrate, it proceeds to the second question: whether the claim at issue is covered by the arbitration agreement." *Wheeler*, 2020 U.S. Dist. LEXIS 215385 at *4. In this second step, the Court must determine if legal constraints external to the agreement preclude arbitration of those claims. Id., at * 4 - *5 (citing *Webb*, 89 F.3d at 258 (5th Cir. 1996) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985))).

### B. Under 9 U.S.C. § 2, Repudiation of a Contract May Negate Arbitration Clause.

An arbitration agreement of a contract is presumed valid and enforceable *unless* grounds "exist at law or in equity for the revocation of" the contract. 9 U.S.C. § 2; *Augustine v. Dallas Med. Ctr., LLC,* 2019 U.S. Dist. LEXIS 141772 at *4 (E.D.Tex. 2019). Generally applicable contract defenses may be applied to invalidate arbitration agreements without contravening § 2. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686 (1996); *Comb v. Paypal, Inc.*, 218 F. Supp. 2d 1165, 1170 (N.D. Cal. 2002); accord *Jefferson v. Fannie Mae*, 2016 U.S. Dist. LEXIS 129002 at *23 (E.D. Tex. 2016).

A party may successfully challenge the validity of an arbitration agreement by "showing that under prevailing law, he would be relieved of his contractual obligations to arbitrate if his allegations proved to be true" in conjunction with producing "evidence to substantiate his factual allegations." *Augustine* at *4 (citing *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 710 (5th Cir. 2002); and *Trammell v. AccentCare, Inc.*, 776 Fed. Appx. 208 (5th Cir. June 7, 2019)).

An absolute repudiation may consist of words or actions by a party to an agreement that indicate an intention that they are not going to perform according to the terms of the agreement in the future. *Johnson v. JPMorgan Chase Bank, N.A.* 2013 U.S. Dist. LEXIS 81243 at *13 (E.D.Tex. 2013). A party's declaration of its repudiation must be made positively and unconditionally, with the fixed intention to refuse to perform its obligation. *Id.* (internal citations omitted).

**C. Scope of Arbitration Clause Does Not Extend to the Claims of the Complaint.**

The language of a contract defines the scope of disputes subject to arbitration by that contract. *Bayco Prods. v. Protorch Co.,* 2020 U.S. Dist. LEXIS 89250 at *15 (E.D.Tex. 2020) (citing *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002)). Whether a claim falls within the scope of an arbitration agreement depends on the factual allegations of the complaint. *Polyflow, L.L.C. v. Specialty RTP, L.L.C.,* 993 F.3d 295, 304 (5th Cir. 2021) (citing *Ford v. NYLCare Health*

*Plans*, 141 F.3d 243, 250 (5th Cir. 1998)). If a claim is completely independent of a contract, and could be maintained without reference to the contract, *it is not arbitrable*. *Id.*

### D. Scope of Arbitration Clause Does Not Extend to All Plaintiffs.

Who is actually bound by an arbitration agreement is a function of the intent of the parties. *Bayco* at \*13 - \*14 (citing *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 715 (5th Cir. 2017)). A party cannot be required to submit a dispute to arbitration if they have not agreed to do so. *Kapai v. Unified Bus. Techs.*, 2020 U.S. Dist. LEXIS 101414 at \*6 (E.D.Tex. 2020) (citing *AT & T Techs. v. Comms. Workers of Am.*, 475 U.S. 643, 648 (1986)). Arbitration is a way to resolve only those disputes that the parties have agreed to submit to arbitration. *Kapai* at \*6 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

### E. Direct Benefits Estoppel Does Not Apply.

Direct benefits estoppel *does not apply* if a non-signatory has not sued under an agreement containing an arbitration clause. *Lake Texoma Highport, LLC v. Certain Underwriters at Lloyd's of London*, 2009 U.S. Dist. LEXIS 140949 at \*11-12 (E.D.Tex. 2009) (citing *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006)). Direct benefits estoppel *only* applies to non-signatories who, during the life of a contract containing an arbitration clause, have embraced that contract despite their non-signatory status. *IMA, Inc. v. Columbia Hosp. Med. City*, 1 F.4th 385, 391 (5th Cir. 2021)(citing *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006)). A non-signatory embraces a contract containing an arbitration clause either: 1) by knowingly seeking and obtaining direct benefits from that contract; or 2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract. *Id*. The Court should distinguish cases in which a nonsignatory's claims are not based upon the agreement containing an arbitration clause. *Lake Texoma*, 2009 U.S. Dist. LEXIS 140949 at \*11 (internal citations omitted).

## III.     ARGUMENT

Defendant's Motion should be denied because Defendant has no enforceable agreement to arbitrate the claims of the Complaint. Even assuming, arguendo, that some arbitration clause is enforceable, the claims of the Complaint fall outside the scope of such a clause, as do a number of the Plaintiffs.

### A.     Defendant Has No Enforceable Agreement to Arbitrate.

Determination of the existence of a valid agreement to arbitrate certain claims is an issue of contract formation for this Court to decide. *Wheeler,* 2020 U.S. Dist. LEXIS 215385 at *4; *Kubala*, 830 F.3d at 201. For this determination, the Court applies ordinary state-law principles of contract formation. *Id*. Generally applicable contract defenses may be applied to invalidate arbitration agreements without contravening § 2. *Doctor's Assocs.,* 517 U.S. at 686; *Comb*, 218 F. Supp. 2d at 1170; *Jefferson,* 2016 U.S. Dist. LEXIS 129002 at *23.

Defendant has not properly introduced a valid agreement to arbitrate. *See, e.g., Jallo v. Resurgent Capital Servs., LP*, 131 F. Supp. 3d 609, 613 (E.D.Tex. 2015). The Motion fails to specifically identify which arbitration clause this Court is to evaluate, and fails to provide any verifiable authentication or record that such a clause applies to any Plaintiff. Moreover, Defendant terminated any agreement it had with two of the Plaintiffs, by repudiating that agreement of its own accord,[2] and thereby rendering any arbitration clause unenforceable.

### 1. The Motion Fails to Properly Identify Agreement to Arbitrate.

In all of the Motion's documentation, there is no singular, specific, identification of the Agreement to Arbitrate that Defendant seeks to enforce. More importantly, the Motion and its documentation fail to properly present any authenticable record of any of the Plaintiffs' actual

---

[2] Motion at p.3 ("PayPal terminated two accounts: a business account opened by Plaintiffs Jennifer Ryan and Jenna Ryan Realty, LLC in 2005 and a personal account opened by Jennifer Ryan .. her PayPal accounts were terminated.")

signatures (even in electronic format) for any of the multitude of agreements, policies, and updates ("APU") referred to in the Motion. At best, the Motion presents weak circumstantial evidence that is insufficient to support the relief it seeks.

The Motion's laborious description of an intentionally confusing Gordian knot of APUs,[3] and the documentation offered in support, fail to do two things: 1) clearly identify a singular arbitration clause Defendant seeks to enforce; and 2) include any of "PayPal's records" which might properly authenticate "Signatory Plaintiffs" acceptance of such a clause.

### a.) No Specific Identification of Arbitration Agreement to Be Enforced.

The Motion fails to specifically identify which arbitration agreement it relies upon, despite its claims regarding "the very arbitration agreement at issue."[4]

What is "the very arbitration agreement at issue" ("Mystery Agreement")? Although the Motion makes reference to multiple arbitration agreements, it fails to make any specific identification of the Mystery Agreement. The multitude of arbitration clauses presented in the Motion offer a variety of language of differing scope. Perhaps the Mystery Agreement is the one quoted in the Motion[5] as the "current" clause, presented within Exhibit 5 (ECF No. 10-6) of the Potter Decl.[6]:

> **C. The Agreement to Arbitrate**
>
> The current User Agreement includes the following Agreement to Arbitrate terms:
>
> You and PayPal each agree that any and all disputes or claims that have arisen or may arise between you and PayPal, including without limitation federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved exclusively through final and binding arbitration, rather than in court, except that you may assert claims in small claims court, if your claims qualify and so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis. This Agreement to Arbitrate is intended to be broadly interpreted. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate.25

---

[3] Motion at pp. 4-8; Exhibit A to Motion at ¶¶ 6-8, 10-17.
[4] Motion at p.1.
[5] Motion at p.6.
[6] Ex. 5 at p.62.

If so, the Motion utterly fails to identify the "current clause" as "the very arbitration agreement at issue."

Undoubtedly, Defendant does not want the arbitration clause in effect when Jennifer Ryan first opened her account – which is also the only version that Defendant offers any arguably authenticable information for[7] – as presented within Exhibit 6 (ECF No. 10-7) of the Potter Decl.[8]:

> **15.1 Arbitration.** For any Claim (excluding Claims for injunctive or other equitable relief) where the total amount of the award sought is less than $10000 USD , you or PayPal may elect to resolve the dispute through binding arbitration conducted by telephone, on-line, and/or based solely upon written submissions where no in-person appearance is required. In such cases, the arbitration shall be administered by the American Arbitration Association or JAMS, in accordance with their applicable rules, or any other established ADR provider mutually agreed upon by the parties. Any judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.
>
> **15.2 Court.** Alternatively, any Claim may be adjudicated by a court of competent jurisdiction located in Santa Clara County, California or where the defendant is located (in PayPal's case, San Jose, California, and in your case, your home address or principal place of business). You and PayPal agree to submit to the personal jurisdiction of the courts located within the county of Santa Clara, California.
>
> **15.3 Alternative Dispute Resolution.** PayPal will consider use of other alternative forms of dispute resolution, such as binding arbitration to be held in Santa Clara County, California or another location mutually agreed upon by the parties.
>
> **15.4 Violations of Section 15.** All Claims (excluding requests for injunctive or equitable relief) between the parties must be resolved using the dispute resolution mechanism that is selected in accordance with this Section by the party first to assert a Claim, either through a court filing or commencement of arbitration. Should either party file an action contrary to this Section 15, the other party may recover attorneys' fees and costs up to $1000 USD , provided that the party seeking the award has notified the other party in writing of the improperly filed Claim, and the other party has failed to withdraw the Claim.

This version seems to render arbitration optional ("may elect to resolve"), and provides that the dispute resolution mechanism chosen by the "first party to assert a Claim" is the method that prevails.

The Motion and its exhibits fail to specifically identify, with any certainty, the Mystery Agreement. This mystery renders application of the two-step *Kubala* framework practically, if not completely, impossible.

> **b.) The Motion Fails to Provide an Authenticable Record of Any Arbitration Agreement to Be Enforced.**

---

[7] *See* Section IV(A)(1)(b), below.
[8] Potter Decl., Ex. 6 at p. 13 of 120.

Although the Motion and the Potter Decl. allege that Jennifer Ryan and Jenna Ryan Realty are so-called "Signatory Plaintiffs" to the Mystery Agreement, those documents do not offer any user-specific, authenticable documentation in support of that assertion. The Potter Decl. offers nothing more than references to "PayPal's records" – in conjunction with generic user requirements – as its "proof" of an enforceable agreement.[9] That "proof" is unavailing, and does not provide proper support for the Motion's desired relief.

Curiously, the Potter Decl. authenticates each of the generic APUs presented as Exhibits 1-8. A copy of each purported APU is presented and, at least, the Potter Decl. identifies each as a "true and correct copy."[10] When it comes to the "Signatory Plaintiffs", however, the Potter Decl. – which the Motion relies upon exclusively – is significantly less detailed, and lacks documentation for authentication. The Potter Decl. makes a number of references to "PayPal's records" with respect to the "Signatory Plaintiffs"[11] – but provides no copies or samples of, or documents from, "PayPal's records."

Instead, the Motion and the Potter Declaration attempt to interweave nominal information specific to the "Signatory Plaintiffs" with statements of generic information required of users at that time – and then present it all as actual proof that the "Signatory Plaintiffs" provided and/or agreed to such information.[12] What the Motion actually presents, however, is – at best – unauthenticated circumstantial evidence.

Consider, for example, paragraph 18 of the Potter Decl. It begins with "PayPal's records indicate that on July 22, 2005, Signatory Plaintiffs created and registered a PayPal account, with the

---

[9] Exhibit A to Motion at ¶¶ 6-8, 10-17.
[10] *Id*. at ¶¶ 10-14, 18, 19.
[11] *Id*. at ¶¶ 18, 19.
[12] *Id*. at ¶2 ("I have personally reviewed the user records for Plaintiffs Jenna Ryan Realty, LLC's and Jennifer Ryan's (collectively, "Signatory Plaintiffs") PayPal accounts. I am also familiar with the process that prospective PayPal users currently go through to register to use PayPal's services, as well as *the process that existed when* Signatory Plaintiffs registered their accounts"), (emphasis added), ¶¶ 5, 18, 19.

e-mail addresses jennaryanrealty@gmail.com and selfloveuonline@gmail.com, and consented to the User Agreement under the username "jennifer ryan" with business information "Jenna Ryan Realty." However, the Potter Decl. provides *no* documentation of "PayPal's records" specific to that information. It provides no description or documentation of how "PayPal's records" *indicate* such information. If Ms. Potter "personally reviewed the user records for" the "Signatory Plaintiffs" then why is a "true and correct copy" of those user records not included (with the labyrinth of generic APUs) for the Court to review?

Paragraph 18 of the Potter Decl. next asserts that "[A]s part of the account registration process, Jennifer Ryan provided her date of birth and social security number" but – once again – provides no authenticated documentation or evidence showing "PayPal's records" for the Signatory Plaintiffs in this respect, or even generically for any user.

At best, if the information and documentation presented Paragraph 18 of the Potter Decl. is to be considered valid support, then the only version of an arbitration clause it supports is the clause in effect when the Jennifer Ryan first opened her account (presented within Exhibit 6 (ECF No. 10-7) of the Potter Decl.). Plaintiffs respectfully submit, however, that neither the Motion itself, nor the Potter Decl., provides any properly authenticated (or authenticable) information or documentation specific to the "Signatory Plaintiffs." Here, the Motion fails to properly support the relief it seeks.

**2. Defendant Repudiated Agreement, Leaving Arbitration Unenforceable.**

Defendant terminated and revoked any contractual relationship that it might have had with Plaintiffs Jennifer Ryan and Jenna Ryan Realty, LLC ("Two Ryan Plaintiffs").[13] Defendant's termination was unconditional and permanent, and unequivocally indicated that Defendant would

---

[13] Motion at p. 3; Exhibit A to Motion at ¶¶ 2, 24.

no longer perform its obligations.[14] Defendant's actions, and related communications, constitute an absolute repudiation of any agreement(s) it may have had with the Two Ryan Plaintiffs. *Johnson*, 2013 U.S. Dist. LEXIS 81243 at *13. To the extent that some enforceable agreement existed, Defendant's actions and words constituted a termination of that agreement – relieving the Two Ryan Plaintiffs of their contractual obligations. *Augustine* at *4.

As a matter of equity, at least, Defendant should not be allowed to unilaterally terminate its contractual obligations, on the one hand, only to turn around and demand that the Two Ryan Plaintiffs be bound to the terms of the revoked agreement, on the other hand.

    **B.    The Scope of Any Enforceable Arbitration Agreement Does Not Encompass All Plaintiffs, or the Claims of the Complaint.**

Even if there is some enforceable Mystery Agreement, the scope of such an agreement does not extend to: 1) the claims of the Complaint; or 2) all Plaintiffs. The claims of the Complaint concern illegal action taken by the Defendant (*i.e.*, the Press Release) *after* Defendant terminated any agreement it had with any Plaintiff. Furthermore, direct benefits estoppel does not apply. Not all Plaintiffs sought or obtained direct benefits from any agreement with Defendant, and the claims asserted in the Complaint do not seek to enforce any such agreement.

    **1.    The Claims of the Complaint Do Not Fall Within the Scope of Any Agreement to Arbitrate.**

The claims of the Complaint are focused upon Defendant's illegal Press Release that was proactively circulated by Defendant, literally moments after Defendant terminated any agreement(s) it had with the Two Ryan Plaintiffs. This wrong was something that none of the provisions of any of Defendant's APUs addressed or contemplated – even the so-called privacy policies. Defendant's

---

[14] See Complaint, Exhibit A (ECF No. 9-1) at p.1 ("You can no longer do business with PayPal … your account has been permanently limited, with no further ability to send or receive funds").

illegal Press Release was a pre-planned media attack upon Ms. Ryan and her reputation – and the record before this Court shows this.

### a.) The Record Shows Defendant's Illegal Press Release Was Pre-Planned and Proactive – Not Reactive – In Nature.

In a desperate attempt to keep its wrongful actions within the scope of the Mystery Agreement, the Motion disingenuously attempts to claim that the illegal press release was responsive to media inquiries about Defendant's termination of its agreements with the Two Ryan Plaintiffs.[15] The Motion provides *zero* support for this assertion.

The Complaint provides proof indicating that this assertion is most likely false.[16] As stated in the Complaint, Defendant first notified Ms. Ryan of its termination of its agreements with the Two Ryan Plaintiffs on January 21, 2021 at 6:45 pm Central time. Ms. Ryan received the first media inquiry about Defendant's termination 46 minutes later.[17]

In order for the Motion's assertion to be true, the following would have had to happen within the span of 45 minutes: 1) Laura Hautala would spontaneously inquire with Defendant about either of the Two Ryan Plaintiffs and their relationship to Defendant; 2) Defendant would, within mere minutes, respond to the spontaneous inquiry that – based upon a social media post by Ms. Ryan, Defendant determined that post violated Defendant's policy(ies) and therefore Defendant terminated not just Ms. Ryan, but both of the Two Ryan Plaintiffs; 3) Ms. Hautala would receive Defendant's response, process it, decide to contact Ms. Ryan for comment; and 4) Ms. Hautala would draft and send her email inquiry to Ms. Ryan.

Plaintiffs respectfully submit that this scenario is highly unlikely.

---

[15] Motion at p. 3.
[16] Complaint at ¶¶ 17-20.
[17] *Id*. at ¶18.

Plaintiffs' Response to Motion to Compel Arbitration 11

Plaintiffs also respectfully submit that it is much more likely – and in keeping with the times established in the Complaint – that: 1) Ms. Hautala received an unprompted and unrequested announcement from Defendant that it terminated both of the Two Ryan Plaintiffs, at the same time or minutes after Defendant sent its notification to Ms. Ryan; and 2) Ms. Hautala received Defendant's unprompted announcement, and decided to contact Ms. Ryan for comment. Given the timing of the media activities within an hour of Defendant's notification to Ms. Ryan, it also seems likely that the unprompted and unrequested announcement from Defendant was sent to third party media contemporaneous with, or even in advance of, Defendant's notification to Ms. Ryan.

The facts as pleaded in the Complaint indicate that Defendant's illegal Press Release was pre-planned and proactive – not reactive, as asserted in the Motion.

### b.) Nothing Within Any of Defendant's Agreements Contemplates Defendant Proactively Publicizing Its Termination of the Two Ryan Plaintiffs.

If Defendant's actions after terminating its agreements with the Two Ryan Plaintiffs were somehow related to a pre-existing provision in Defendant's agreements, such a provision would be procedurally unconscionable. *Xome Holdings LLC v. Derbonne*, 2017 U.S. Dist. LEXIS 84463 at *6 (E.D. Tex. 2017) (internal citations omitted). There is no way that any Plaintiff would have agreed to such a provision if they were able to understand that it would allow Defendant to proactively publicize its termination of that Plaintiff.

Plaintiffs respectfully submit that there was no such provision within any of the Defendant's litany of APUs – and that Defendant's illegal Press Release therefore falls outside the scope of any of its agreements. A review of the litany of APUs finds no provision for, or suggestion that, Defendant may proactively publicize its decision to terminate its agreement with any user immediately after (or before) such termination. Such an act does not fall within any provision in any

APU. Defendant's illegal Press Release was pre-planned, deliberate and proactive, not inadvertent or the result of some third party bad actor – nor was it responsive to inquiries from third parties.

### 2. Not All Plaintiffs Are Within the Scope of Any Agreement to Arbitrate.

The Motion fails to provide any proper support for its contention that all Plaintiffs are governed by the Mystery Agreement and required to arbitrate their claims. The Motion only offers up two unavailing and flawed assertions as support.

The Motion's first assertion is that the "Non-Signatory Plaintiffs" are entities operated by Jennifer Ryan.[18] While this is factually accurate, it is also largely irrelevant. The Motion makes no arguments, and provides no support, concerning the relevance of this statement. The Defendant had no contractual or business relationship with the "Non-Signatory Plaintiffs" – and none is properly claimed or identified in the Motion. In fact, the Motion's designation of these Plaintiffs as "Non-Signatory" is an implicit admission that there was no relationship.

The Motion's second assertion on this issue is inaccurate and factually flawed. The Motion *erroneously* asserts that the claims of "Non-Signatory Plaintiffs" are "based on PayPal's termination of the Signatory Plaintiffs' PayPal accounts and disclosure of such termination" – and therefore the "Non-Signatory Plaintiffs" seek to "benefit from the User Agreement … between Signatory Plaintiffs' and PayPal."[19]

In reality, the claims of all Plaintiffs – especially the "Non Signatory Plaintiffs" – do not seek to "benefit from the User Agreement" at all. None of the claims in the Complaint seek to enforce any provision of any agreement that Defendant had with the Two Ryan Plaintiffs. Rather, the claims of Complaint seek to redress damages caused by Defendant's unlawful actions *after* Defendant terminated its agreement with the Two Ryan Plaintiffs.

---

[18] Motion at p. 14.
[19] *Id*.

### a.) "Non-Signatory" Plaintiffs Do Not Seek Benefits From Any Agreement.

As explained, *supra*, the Defendant's illegal Press Release – and damages resulting from it – falls outside the scope of any agreement Defendant may have had with the Two Ryan Plaintiffs. There are no provisions in any agreement produced by Defendant that applies to the claims of the Complaint. There is nothing in the Complaint, on behalf of any Plaintiff, that seeks to enforce any term of any agreement Defendant may have.

None of the "Non-Signatory Plaintiffs" seek to enforce or benefit from any provision of any agreement Defendant may have had with the "Signatory Plaintiffs" – instead, they seek to redress damages caused by Defendant's illegal actions, which fall outside the scope of any APU.

### b.) Direct Benefit Estoppel Is Not Applicable to Non-Signatory Plaintiffs.

Direct benefits estoppel *does not apply* to a non-signatory, if that party has not sued under an agreement containing an arbitration clause. *Lake Texoma*, 2009 U.S. Dist. LEXIS 140949 at *11-12. Direct benefits estoppel *only* applies to non-signatories who have embraced a contract despite their non-signatory status. *IMA, Inc*, 1 F.4th at 391. To properly support application of direct benefits estoppel, Defendant must show that the "Non-Signatory Plaintiffs" have either: 1) knowingly sought and obtained direct benefits from a contract; or 2) sought to enforce the terms of that contract or asserting claims that must be determined by reference to that contract. *Id*. The Motion fails to properly show or support that the "Non-Signatory Plaintiffs" have done either of these acts.

With respect to the first act, the Motion makes only a bald conclusory assertion that the "Non-Signatory Plaintiffs" seek "to benefit from the User Agreement as the fulcrum of the business relationship between Signatory Plaintiffs' and PayPal."[20] The Motion offers no evidence or argument in support of this assertion. None of the "Non-Signatory Plaintiffs" sought and obtained direct benefits from any agreement Defendant had with the Two Ryan Plaintiffs.

---

[20] Motion at p. 14.

With respect to the second act, the Motion offers no substantive argument or support for the notion that "Non-Signatory Plaintiffs" seek to enforce any agreement or assert claims that must be determined by reference to an agreement. As established, *supra*, none of the Plaintiffs seek to enforce any term of any agreement Defendant may have had with the Two Ryan Plaintiffs – all claims in the Complaint are based upon Defendant's unlawful acts after termination of such agreement. Similarly, the claims of the Complaint need not be determined by reference to an agreement. The Complaint asserts, and the Motion admits, that Defendant terminated any agreement it had with the Two Ryan Plaintiffs. The wrongful acts of the Defendant occurred *after* termination of any such agreement, and stand independent – and outside the scope – of any agreement.

The Motion therefore fails to properly support the application of direct benefits estoppel against the "Non-Signatory Plaintiffs."

### IV. CONCLUSION

The Motion fails to properly support the relief it seeks.

Plaintiffs have shown that Defendant has no enforceable agreement to arbitrate the claims of the Complaint. The Motion fails to: accurately identify a single arbitration clause for the Court to evaluate or enforce; or sufficiently authenticate any agreement with the Two Ryan Plaintiffs. Most importantly, Defendant terminated and repudiated any agreement with the Two Ryan Plaintiffs, and should not be allowed to attempt to selectively enforce such an agreement now.

Plaintiffs have further shown that the claims of the Complaint, and the Plaintiffs themselves, all fall outside the scope of any arbitration agreement. Aside from conclusory assertions, the Motion provides no proper support for its arguments and insinuations to the contrary.

For the reasons set forth herein, Plaintiffs respectfully submit that the Motion should be DENIED in its entirety. In the alternative, Plaintiffs respectfully submit that the Motion should be DENIED with respect to the "Non-Signatory Plaintiffs."

September 19, 2022                                  Respectfully Submitted,

                                             By:  /s/ *Ronald W. Burns*

                                              Ronald W. Burns (*Lead Counsel*)
                                              Texas State Bar No. 24031903
                                              Fresh IP, PLC
                                              5999 Custer Road, Suite 110-507
                                              Frisco, Texas 75035
                                              972-632-9009
                                              ron@freship.com

**ATTORNEY FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5.  As such, the foregoing was served on all counsel of record who have consented to electronic service.  Local Rule CV-5.  Pursuant to Fed. R. Civ. P. 5 and Local Rule CV-5, all others not deemed to have consented to electronic service will be served with a true and correct copy of the foregoing by email, on this the 19th day of September, 2022.

                                              /s/ Ronald W. Burns
                                                  Ronald W. Burns, Esq.