IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **JLR GLOBAL, LLC, JENNA RYAN REALTY, LLC, JENNA RYAN REAL ESTATE, LLC, FIRST PLACE REAL ESTATE, SELFLOVEU, LLC, THE JENNA RYAN SHOW, DOTJENNA, and JENNIFER RYAN,**<br><br>Plaintiffs,<br><br>v.<br><br>**PAYPAL INC.,**<br><br>Defendant. | Case No. 4:22-CV-559 |

**REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS**

Plaintiffs seek to avoid arbitrating their claims by arguing that: (1) PayPal offered no authenticable agreement to arbitrate; (2) PayPal's termination of Signatory Plaintiffs'[1] accounts somehow relieved them of their obligation to arbitrate; and (3) the scope of the Agreement to Arbitrate does not encompass all Plaintiffs or claims. Each of these arguments ignores the vast body of case law PayPal cited and relied on in its Motion. First, courts routinely enforce as authentic clickwrap agreements generally, and in particular the very Agreement to Arbitrate at issue. Second, Plaintiffs' broad agreement to resolve any claims or disputes arising out of their relationship with PayPal by arbitration includes any challenges to the termination of that relationship, as courts have repeatedly found in parallel cases. Finally, under settled law, the fact that *all the claims* here derive from PayPal's termination of certain Plaintiffs from its platform is

---

[1] All capitalized terms have the same meaning as that ascribed to them in the Motion to Compel Arbitration and to Dismiss.

**Reply in Support of Motion to Compel Arbitration and to Dismiss - Page 1**

more than sufficient reason to compel the entirety if this lawsuit to arbitration (or stay the remainder pending the arbitration's conclusion).

Accordingly, and for the reasons below and in its Motion, PayPal requests that the Court compel arbitration on all of Plaintiffs' claims and dismiss this matter.

I.  **PayPal Established the Existence of a Binding Arbitration Agreement.**

Ryan first agreed to PayPal's User Agreement, which included an alternative dispute resolution provision, via affirmative conduct through its clickwrap agreement in 2005. ECF No. 10-1, ¶¶ 11, 18. Ryan and the other Signatory Plaintiffs on multiple other occasions then agreed to the User Agreement's Agreement to Arbitrate from 2012 on. *Id.* ¶¶ 18-20. Despite ample opportunity, Signatory Plaintiffs do not claim they ever repudiated, terminated, or exercised their right to opt out of the Agreement to Arbitrate during the relevant time periods.

Thus, PayPal has placed before the Court a valid, authenticable, and fully enforceable agreement to arbitrate. Other courts have addressed substantively identical challenges to the authentication and enforceability of PayPal's arbitration agreements and determined that such arguments are "a nonstarter." *See Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, No. 17 CV 1542, 2018 WL 2933608, at *4 (N.D. Ill. June 12, 2018); *see also Jia v. Nerium Int'l LLC*, No. 3:17-CV-03057-S, 2018 WL 4491163, at *3-5 (N.D. Tex. Sept. 18, 2018), *order clarified*, No. 3:17-CV-3057-S, 2019 WL 3947712 (N.D. Tex. Aug. 21, 2019) (finding plaintiff was bound by the clickwrap agreement through her affirmative "click" as evidenced by testimony from person with knowledge of the standard enrollment practices).

As to the existence of the agreement, in *Friends for Health*, the court explained that, because PayPal established through an affidavit of a person with knowledge that "it would have been impossible for any of the plaintiffs to create a PayPal account without accepting the user

agreement," that was sufficient evidence of the existence of an agreement. *Id*. Like many similar contractual relationships, especially around payment processing and online commerce, these at-will relationships could run more than a decade, requiring an efficient means to change, modify, or update provisions to address changes in laws, regulations, technology, business practices, and other relevant considerations. Here, through the Declaration of Jill Potter, Legal Specialist for PayPal, PayPal offered evidence that Signatory Plaintiffs could not have created their accounts without first checking a box confirming consent and acceptance of the User Agreement. ECF No. 10-1, ¶¶ 4-5. Indeed, Plaintiff Jennifer Ryan admits that she completed this process for her 2005 account. Compl. ¶ 15, ECF No. 9.

At all relevant times, including when Ryan opened her account in 2005, PayPal's User Agreement included some form of alternative dispute resolution provision. ECF No. 10-1, ¶ 11; ECF No. 10-7, 13. There is no dispute that PayPal later updated the User Agreement to include the mandatory Agreement to Arbitrate and did so precisely in the manner the parties had agreed such amendments would be validly made. ECF No. 10-1, ¶ 11; ECF No. 10-7, 4 ("We may amend this Agreement at any time by posting the amended terms on our site. Except as stated below, all amended terms shall be effective 30 days after they are initially posted on our site."). This provision allowed PayPal to make future updates or substantive changes to the User Agreement, which Signatory Plaintiffs then had the freedom either to accept by continuing to use PayPal's services, or to decline by ceasing to do business with PayPal, which was their prerogative because they were not locked into any term of the agreement. ECF No. 10-7, 4 ("If you do not agree to be bound by the terms and conditions of this Agreement, please do not use or access our Services.").

In addition, a notice of the change to mandatory, binding arbitration was contained in a Policy Update sent to active PayPal customers like Ryan. ECF No. 10-1, ¶ 12. It provided

information about the addition of the Agreement to Arbitrate to the User Agreement, which was posted on PayPal's website. *Id.* That posting contained the full text of the Agreement to Arbitrate, which went into effect on November 1, 2012. *Id*. The User Agreement was similarly updated with the last relevant modification to the Agreement to Arbitrate on November 9, 2020. ECF No. 10-6; ECF No. 10-1, ¶¶ 10, 17. Under these undisputed facts, there is no question that Signatory Plaintiffs' acceptance of PayPal's services was effective consent to the 2005 User Agreement and all subsequent versions, including the November 9, 2020 version. The court in *Friends for Health* expressly approved this amendment process and found that a plaintiff who created her account in 2004 had sufficient notice of the amendments such that she was bound by the binding arbitration agreement. *Friends for Health: Supporting N. Shore Health Ctr.*, No. 17 CV 1542, 2018 WL 2933608, at *6 ("Kass accepted the 2004 user agreement when she registered for PayPal, and was informed that the agreement was subject to change. Defendants have put forth evidence that Kass was notified of the 2012 amendments, including the arbitration provision, and was given an opportunity to opt out of that provision. She has not rebutted that evidence, and did not opt out of the arbitration provision. Accordingly she is bound by that arbitration agreement …."); *see also Cheng v. PayPal, Inc.*, Case No. 21-cv-03608-BLF, 2022 WL 126305 (N.D. Cal. Jan. 13, 2022) (determining PayPal's Agreement to Arbitrate "is part of a valid clickwrap agreement under Delaware law").

Consistent with *Friends for Health*, *Cheng*, and similar authority, it is well-established as a general principle of law that "overt manifestation of assent—not subjective intent—controls the formation of a contract; that the 'only intent of the parties to a contract which is essential is an intent to say the words or do the acts which constitute their manifestation of assent'; that 'the intention to accept is unimportant except as manifested." *Indus. Am., Inc. v. Fulton Indus., Inc.*,

**Reply in Support of Motion to Compel Arbitration and to Dismiss - Page 4**

285 A.2d 412, 415 (Del. 1971) (quoting Restatement of Contracts, § 20); *see also Hollywood Fantasy Corp. v. Gabor*, 151 F.3d 203, 210 (5th Cir. 1998). Indeed, parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the contract. *Am. Legacy Found. v. Lorillard Tobacco Co.*, 831 A.2d 335, 349-50 (Del. Ch. 2003); *Hollywood Fantasy Corp.*, 151 F.3d at 210. Thus, even if Signatory Plaintiffs had rejected the amendments following the 2005 User Agreement orally or in writing (they did neither here), but then accepted PayPal's services under the User Agreement, Signatory Plaintiffs would be bound to the User Agreement.[2]

By both agreeing that the initial PayPal User Agreement they entered could be updated as it was, and by continuing to use PayPal's services provided subject to that contract after those updates occurred, the Plaintiffs are bound by the current terms of the User Agreement, which contains the clear Agreement to Arbitrate, dated November 9, 2020.

**II.    The Agreement to Arbitrate Survives the Termination of the User Agreement.**

Plaintiffs argue that because "Defendant terminated and revoked any contractual relationship" with Signatory Plaintiffs, the Agreement to Arbitrate was similarly terminated. Resp. 9-10. This argument ignores Supreme Court precedent that states arbitration agreements can and do survive termination or expiration of the underlying contract. As the Fifth Circuit has explained, "[a]lthough the contract containing the arbitration clause expired before the dispute arose that is the subject of this suit, the Supreme Court has made it clear that an arbitration clause applies to a grievance arising after the expiration of the agreement when 'under normal principles of contract

---

[2] That Plaintiffs are commercial parties only reinforces the fact they are fully bound to the terms of the User Agreement, and claims that they had not read the updates or other terms would be unavailing. *See, e.g.*, *Doe v. Massage Envy Franchising, LLC*, 2020 Del. Super. LEXIS 3021, 2020 WL 7624620, *7 (enforcing arbitration provision within clickwrap agreement despite fact that "Plaintiff argues she does not remember checking the box and she did not read or understand the terms in the Agreement; . . . Plaintiff's failure to read or investigate the Agreement is of no consequence on whether the claims are subject to arbitration.")

**Reply in Support of Motion to Compel Arbitration and to Dismiss - Page 5**

interpretation, the disputed contractual rights survive expiration of the remainder of the agreement.'" *Hanson Pipe & Products, Inc. v. Bridge Techs., LLC*, 160 F. App'x 380, 382 (5th Cir. 2005) (quoting *Litton Fin. Printing Division v. N.L.R.B.*, 501 U.S. 190, 205–06 (1991)). In their Original Complaint, Plaintiffs brought a breach of contract claim, arguing PayPal breached its privacy agreement by publicizing the fact that it terminated Signatory Plaintiffs' accounts. ECF No. 1-2, ¶ 38. Although Plaintiffs have artfully amended their pleading to remove the breach cause of action, the crux of their claims remain the same—Plaintiffs allege that "there was no legitimate public interest in embarrassing information about the termination of Ryan's account" because "Defendant's termination of Ryan's account, and its termination of the agreement, was based upon a factually false claim that Ryan had somehow violated Defendant's 'Acceptable Use' policy in the agreement." ECF No. 9, ¶ 67. It is proper to require that Plaintiffs arbitrate the claims they expressly agreed to submit to binding arbitration.

**III.   The User Agreement Encompasses Plaintiffs' Claims.**

The parties agreed to a broad arbitration clause requiring that, except for claims brought in small claims court, "any and all disputes or claims that have arisen or may arise between you and PayPal, including without limitation federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved exclusively through final and binding arbitration, rather than in court." ECF No. 10-6, 62. Indeed, the Agreement to Arbitrate expressly specifies that it "is intended to be broadly interpreted." *Id.* Signatory Plaintiffs had the opportunity but did not elect to opt out of this agreement. It is undisputed that each of the claims asserted sound in both statute and tort and involve PayPal and Signatory Plaintiffs. Consequently, they are expressly subject to the Agreement to Arbitrate. *See Cheng*, No. 21-CV-03608-BLF, 2022 WL 126305, at *3 ("This lawsuit is a dispute that has arisen

between Cheng and PayPal, and it includes 'common law claims' based in contract and tort…. Cheng does not dispute this point. Accordingly, the arbitration agreement covers this dispute if the agreement is valid.").

### IV. Under The Doctrine of Direct-Benefits Estoppel, the Derivative Claims of the Non-Signatory Plaintiffs Should be Compelled to Arbitration as Well.

Plaintiffs finally argue that the doctrine of direct-benefits estoppel does not extend the Agreement to Arbitrate to Non-Signatory Plaintiffs because they do not seek to enforce any provision of the User Agreement. Resp. 13-15. Plaintiffs also seek to minimize the dispositive fact that Jenna Ryan operates all Non-Signatory Plaintiffs. *Id*. at 13. Importantly, a court may compel arbitration against a non-signatory who has sued the signatory, even if the suit is not based on the contract containing the arbitration clause. *Wood v. PennTex Res., L.P*., 458 F. Supp. 2d 355, 369 (S.D. Tex. 2006), *aff'd sub nom*. 322 F. App'x 410 (5th Cir. 2009). And the Fifth Circuit has noted that courts have employed estoppel to dismiss "strategic pleading" that seeks to avoid arbitration. *Hays v. HCA Holdings, Inc*., 838 F.3d 605, 613 (5th Cir. 2016). Although Plaintiffs have strategically amended their Complaint to remove their breach of contract claim, the causes of action at issue still arise from the PayPal's termination of the relationship based expressly on a violation of the User Agreement and the suit must be determined by reference to the User Agreement. *Noble Drilling Servs., Inc. v. Certex USA, Inc*., 620 F.3d 469, 473 (5th Cir. 2010) (stating, "[a] non-signatory can 'embrace' a contract containing an arbitration clause … by … asserting claims that must be determined by reference to that contract"). Not surprisingly, even after trying to amend away the contract basis for this action, Plaintiffs still directly rely on the User Agreement by alleging several instances of PayPal's purported noncompliance with the User Agreement in making out the elements of their claims. As to the Electronic Fund Transfer Act ("EFTA") claim:

**Reply in Support of Motion to Compel Arbitration and to Dismiss - Page 7**

- Plaintiffs plead as an element of their claim under the EFTA that "[a]t the time that Ryan accepted Defendant's agreement [here, the User Agreement] for electronic fund transfer service (with Defendant), Defendant's terms and conditions of electronic fund transfers should have disclosed under what circumstances Defendant would, in the ordinary course of business, disclose information concerning the Ryan's account to third persons." ECF No. 9, ¶ 31.

- Plaintiffs further allege "[t]o the extent that Defendant's terms and conditions [set forth in the User Agreement] did disclose under what circumstances Defendant would – in the ordinary course of business – disclose information concerning the Ryan's account to third persons, those disclosures did not state, indicate, or suggest that Defendant would send immediate notifications to national news and media outlets when it terminated Ryan's account." *Id*. ¶ 32.

- Plaintiffs assert that they are <u>all</u> entitled to damages as a result of PayPal's "notifications to news outlets, such as CNET News and CBS News," because the notifications "constituted a de facto press release ("Press Release") by Defendant that it terminated its relationship with Ryan." *Id*. ¶¶ 34-37.

Plaintiffs' remaining claims are similarly centered on the initial existence of the User Agreement: had the User Agreement not been executed, PayPal would not have received any of Plaintiffs' alleged "private" information, nor could it have disseminated any such information. Plaintiffs' claims are "inherently derivative of, or 'premised in part upon,'" the User Agreement containing the Agreement to Arbitrate. *See Lake Texoma Highport, LLC v. Certain Underwriters at Lloyd's of London*, No. 4:08-CV-285, 2009 U.S. Dist. LEXIS 140949, at *14 (E.D. Tex. Dec. 28, 2009). Indeed, in asserting their invasion of privacy claim, Plaintiffs allege that PayPal's

**Reply in Support of Motion to Compel Arbitration and to Dismiss - Page 8**

disclosure of the termination was wrongful because "Defendant's termination of Ryan's account, and its termination of the agreement, was based upon a factually false claim that Ryan had somehow violated Defendant's 'Acceptable Use' policy in the agreement." *Id.* ¶ 67 (emphasis added).

Likewise, Non-Signatory Plaintiffs concede they received benefits under the User Agreement by seeking damages under 15 U.S.C. § 1693(a)(9) of the EFTA. ECF No. 9, ¶¶ 28, 35, 37. Section 1693(a)(9) says that "financial institution" means "[any] person who, directly *or indirectly*, holds an account belonging to a consumer." 15 U.S.C. § 1693(a)(9) (emphasis added). Therefore, the fact that it is uncontested that Ryan operates all the Non-Signatory Plaintiffs is dispositive. The Non-Signatory Plaintiffs' EFTA claims hinge on PayPal indirectly holding their accounts. Indeed, in pleading their claim, Non-Signatory Plaintiffs allege that the User Agreement should have disclosed under what circumstances PayPal would have disclosed the termination. ECF No. 9, ¶¶ 31. Thus, Non-Signatory Defendants cannot on one hand accept and seek the benefits of the User Agreement, and on the other hand try to escape its binding dispute resolution provision requiring arbitration. *See, e.g.*, *Noble Cap. Grp., LLC v. US Cap. Partners, Inc.*, No. A-19-CV-1255-LY, 2020 U.S. Dist. LEXIS 84006, at *22-23 (W.D. Tex. May 12, 2020) ("Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes…") (citation omitted).

V.   **Conclusion**

For the reasons set forth above and in PayPal's Motion, Plaintiffs' claims are subject to the valid and enforceable Agreement to Arbitrate within the User Agreement. PayPal requests that the Court grant the Motion and enter an order compelling all Plaintiffs' claims to arbitration and dismissing this action. PayPal requests any other relief the Court deems just and proper.

**Reply in Support of Motion to Compel Arbitration and to Dismiss - Page 9**

Respectfully Submitted,

*/s/ Robert C. Vartabedian*
Robert C. Vartabedian
Texas Bar No. 24053534
Robert.Vartabedian@alston.com
Alix D. Allison
Texas Bar No. 24086261
Alix.Allison@alston.com

Alston & Bird LLP
301 Commerce, Ste. 3635
Fort Worth, TX  76102
Telephone: 214-922-3400
Facsimile: 214-922-3839

**Attorneys for Defendant**

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2022, I caused to be served true and correct copies of the foregoing Notice of Removal by filing such notice with the Court's CM/ECF system.

*/s/ Robert C. Vartabedian*
Robert C. Vartabedian