# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| JLR GLOBAL, LLC, et al., § | |
| § | |
| *Plaintiffs,* § | |
| § | Civil Action No. 4:22-CV-559 |
| v. § | Judge Mazzant |
| § | |
| PAYPAL HOLDING CO., § | |
| § | |
| *Defendant.* § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant's Motion to Compel Arbitration and to Dismiss, or in the Alternative, to Stay this Action Pending Arbitration (Dkt. #10) and Defendant's Motion to Stay Discovery (Dkt. #20).  Having considered the motions and the relevant pleadings, the Court finds that the Defendant's Motion to Compel Arbitration and to Dismiss, or in the Alternative, to Stay this Action Pending Arbitration (Dkt. #10) should be **GRANTED** and Defendant's Motion to Stay Discovery (Dkt. #20) should be **DENIED as moot.**

### BACKGROUND

This case arises out of two PayPal accounts that were ultimately terminated and the subsequent public statements that were made in relation to why the accounts were terminated.  As of January 6, 2021, Plaintiffs Jennifer Ryan ("Ryan") and Jenna Ryan Realty, LLC (collectively, "Signatory Plaintiffs") both had active accounts with Defendant PayPal Holding Company ("PayPal") (Dkt. #10 at 3).  A requirement of having an active account is consenting to PayPal's "User Agreement" upon creation of the account (Dkt. #10, Exhibit 1 ¶ 9).  The extent of this User Agreement is at the core of the pending motion.

On January 6, 2021, Ryan live-streamed her time protesting at the United States Capitol. Statement of Offense at 3–4, *United States v. Ryan*, No. 1:21-CR-050 (D.D.C. Dec. 28, 2021), ECF No. 39. Ryan was criminally charged for her conduct, and as a result, she began raising funds for her "legal fees and losses due to [her] arrest and charges by the FBI" (Dkt. #10 at p. 3).

On January 21, 2021, Ryan made a post on Twitter asking for donations (Dkt. #10 at p. 3). Attached to the post was a link to a PayPal account, specifically, Ryan's realty account under the name "Jenna Ryan Realty, LLC" (Dkt. #10 at p. 3). Later that night, PayPal alleges that Ryan violated the company's "Acceptable Use" policy with her post on Twitter and terminated both Ryan's personal account and her realty account. Following the termination of the two accounts, PayPal informed various media outlets that Ryan's post on Twitter violated PayPal's policy and that her accounts were subsequently terminated. The parties dispute the truth of that statement (Dkt. #9 at p. 3). Ryan asserts that she and her businesses have suffered "extensive financial losses – both immediate and long-term" because of PayPal's "illegal disclosure of Ryan's private personal financial information to news and media outlets" regarding her accounts (Dkt. #9 at p. 6).

On June 8, 2022, Plaintiffs JLR Global, LLC, Jenna Ryan Realty, LLC, Jenna Ryan Real Estate, LLC, First Place Real Estate, SelfLoveU, LLC, The Jenna Ryan Show, dotJenna, and Jennifer Ryan (collectively, "JLR Global") filed suit against PayPal for a breach of contract in the 431st Judicial District Court of Denton County, Texas (Dkt. #1). PayPal removed the case based on diversity jurisdiction (Dkt. #1). JLR Global has since amended its complaint, asserting the following five cause of actions against PayPal: (1) violation of the Electronic Fund Transfers Act ("EFTA"); (2) tortious interference with prospective relations; (3) violation of the Deceptive Trade Practices Act ("DTPA"); (4) invasion of privacy; and (5) intentional infliction of emotional distress (Dkt. #9 at pp. 6–13).

On August 29, 2022, PayPal filed the pending motion to compel arbitration, requesting that the Court compel all of Plaintiff's claims to arbitration based on the mandatory arbitration provision and dismiss the case in its entirety, or in the alternative, stay the case pending arbitration (Dkt. #10). On September 19, 2022, JLR Global filed a response, arguing that the arbitration provision between the parties no longer applies and that it does not cover these type of disputes (Dkt. #14). On September 30, 2022, PayPal filed a reply (Dkt. #18), to which JLR Global filed a sur-reply on October 6, 2022 (Dkt. #19). On November 8, 2022, PayPal filed the pending motion to stay discovery (Dkt. #20). On November 28, 2022, JLR Global filed a response (Dkt. #21), to which PayPal filed a reply on November 28, 2022 (Dkt. #22).

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), parties to a contract may agree that an arbitrator, rather than a court, will resolve disputes arising out of the contract. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (cleaned up). Thus, the FAA establishes "a liberal federal policy favoring arbitration agreements" and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012).

Although there is a strong federal policy favoring arbitration, the policy "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Lloyd's*

*Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 516 n. 5 (5th Cir. 2019) (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478. Rather, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478.

When considering a motion to compel arbitration, courts apply a two-step framework. First, the Court must determine "whether the parties entered into *any arbitration agreement at all.*" *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "This first step is a question of contract formation only—did the parties form a valid agreement to arbitrate some set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 2620 (2018). This initial question is for the Court. *Kubala*, 830 F.3d at 201. To determine whether there is a valid agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).[1] Under Delaware law, a valid contract exists when "(1) the parties intended that the instrument would bind them, demonstrated at least in part by its inclusion of all material terms; (2) these terms

---

[1] The FAA "allows parties to an arbitration contract considerable latitude to choose what law governs some or all of its provisions." *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 53–54 (2015). Under Texas law, a broad choice-of-law provision in a contract survives termination of the contract. *See Quicksilver Resources, Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 953 n.4 (S.D. Tex. 2011). Here, the User Agreement includes a broad Delaware choice-of law provision (Dkt. #10, Exhibit 6 at p. 69) ("[T]he laws of the State of Delaware . . . will govern this user agreement and any claim or dispute that has arisen or may arise between you and PayPal."). When an agreement contains both a choice-of-law provision and an arbitration clause, courts will apply the substantive law of the state named in the choice-of-law provision. *Ebner v. Fin Architects, Inc.*, 763 F. Supp. 2d 697, 700 (D. Del. 2011); *see also Noel v. Paul*, No. 3:21-CV-2485, 2022 WL 4125216, at *4–5 (N.D. Tex. Sept. 9, 2022) (discussing exceptions to this rule that are not present here). Therefore, the Court will proceed by applying Delaware law in its analysis on contract formation.

are sufficiently definite; and (3) the putative agreement is supported by legal consideration." *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1229 (Del. 2018).

If the Court finds that there is a valid agreement to arbitrate, it proceeds to the second question: whether the claim at issue is covered by the arbitration agreement. *IQ Prods.*, 871 F.3d at 348. This second question usually is for the Court unless the arbitration clause contains a valid delegation clause for an arbitrator to determine whether the claim falls within the arbitration agreement. *Kubala*, 830 F.3d at 202. Additionally, the Court must also determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb*, 89 F.3d at 258 (5th Cir. 1996) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

The party seeking to compel arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012). Once the Court determines that there is a valid agreement to arbitrate, the strong federal policy favoring the enforcement of the arbitration agreements applies, and all ambiguities must be resolved in favor of arbitration. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). As the Supreme Court has stated: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Because of the strong presumption in favor of arbitration, the party opposing arbitration bears the burden to demonstrate either that the agreement is invalid or that the claims are outside of the agreement's scope. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

## ANALYSIS

The Court must ultimately decide the applicability of PayPal's User Agreement and the arbitration provision that is contained therein. PayPal asserts there is a valid arbitration clause, applicable to these types of disputes, that was in effect at the time the accounts were suspended and survives the contract termination for this case. Ryan disagrees with that assertion on numerous grounds.

The User Agreement states, in relevant part:

> You and PayPal each agree that any and all disputes or claims that have arisen or may arise between you and PayPal, including without limitation federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved exclusively through final and binding arbitration, rather than in court, except that you may assert claims in small claims court, if your claims qualify and so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis. This Agreement to Arbitrate is intended to be broadly interpreted. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate.

(Dkt. #10 at p. 6). JLR Global argues that there is not an enforceable agreement to arbitrate for various reasons and that the scope of the provision does not apply to JLR Global's current dispute (Dkt. #14). The Court will discuss both arguments in turn by conducting the two-step framework that courts have routinely applied in motions similar to this one. *Kubala*, 830 F.3d at 201.

### I.  Existence of an Arbitration Agreement

For the Court to find there was a valid and enforceable arbitration agreement between the parties in this case, it must answer in the affirmative to three questions. First, it will have to decide that the language of the arbitration clause is generally enforceable against the Signatory Plaintiffs even though there was no valid signature by the Signatory Plaintiffs. Second, the Court will have to decide whether the arbitration clause is enforceable for this suit against JLR Global, LLC, Jenna Ryan Real Estate, LLC, First Place Real Estate, SelfLoveU, LLC, The Jenna Ryan Show, and

dotJenna (collectively, the "Non-Signatory Plaintiffs") through direct benefits estoppel. Finally, the Court will have to decide that the arbitration provision can still be enforced for this suit after the PayPal accounts and related contracts were terminated.

### A. Signatory Plaintiffs

Starting with the enforceability of the provision against the Signatory Plaintiffs, JLR Global argues that because PayPal fails to identify "any authenticable record of any of the [JLR Global]'s actual signatures (even in the electronic format)" and "which arbitration agreement it relies upon," PayPal's motion must fail (Dkt. #14 at pp. 5–6). The Court disagrees. In conducting this analysis, the Court will apply Delaware law.

It is an uncontested fact that the User Agreement at issue is a clickwrap agreement (*see* Dkt. #10, Exhibit 1 ¶¶ 7–9). A clickwrap agreement is an online agreement that requires a "webpage user [to] manifest assent to the terms of a contract by clicking an 'accept' button in order to proceed." *Doe v. Massage Envy Franchising, LLC*, No. S20C-05-5RFS, 2020 WL 7624620, at *2 (Del. Super. Ct. Dec. 21, 2020) (citing *Newell Rubbermaid Inc. v. Storm*, No. 9398-VCN, 2014 WL 1266827, at *1 (Del. Ch. Mar. 27, 2014)). Courts have routinely found clickwrap agreements as binding contracts under Delaware law, despite the lack of an actual signature. *Id.* In clickwrap agreements, an affirmative click is deemed an actual signature that binds the parties. *See id.* at *3. Here, Ryan's first account was created on July 22, 2005, and her second account was created on February 22, 2020 (Dkt. #10, Exhibit 1 ¶¶ 18–19). PayPal has presented a declaration of an employee, who established that it would have been impossible for the two relevant PayPal accounts to have been created without affirmatively clicking and agreeing to the User Agreement (Dkt. #10, Exhibit 1 ¶ 9). Therefore, the Court finds no issue with the fact that a specific signature is not included in the evidence presented, given that both accounts were active. There is more than

7

sufficient evidence that the User Agreements were signed for both accounts and that they are valid and enforceable against the Signatory Plaintiffs.

However, this is not the end of the analysis. A problem remains because the specific User Agreement that the Signatory Plaintiffs signed did not contain the specific language of the arbitration provision that was previously mentioned. Rather, at the time that Ryan's first account was created, there was another dispute resolution provision and an option to arbitrate disputes involving claims "less than $10000 USD" (Dkt. #14 at p. 7). At the time Ryan created her second account, there was a mandatory arbitration provision, but it did not have the exact language as the provision currently in place. The specific mandatory arbitration clause applicable in this case was added in as an amendment on November 9, 2020 (Dkt. #10, Exhibit 1 ¶ 14). However, the Court finds no issue with subjecting the Signatory Plaintiffs to this provision.

The User Agreement that the Signatory Plaintiffs signed when they created their accounts included a change of terms provision, which stated that PayPal may amend the agreement at any time and that by "continuing to use [PayPal's] services after any changes to this user agreement, you agree to abide and be bound by those changes," meaning that continued use of the platform by a user constitutes acceptance of the amended terms (Dkt. #10, Exhibit 1 ¶ 10). To inform the other parties about any changes, PayPal would send an email to its users as well as post the amendments on their website, where the amendment would take effect thirty (30) days later (Dkt. #10, Exhibit 1 ¶¶ 10–11). On August 24, 2012, the parties were first given notice about a change to a mandatory arbitration provision (Dkt. #10, Exhibit 1 ¶ 18). For parties like the Signatory Plaintiffs, who already had a PayPal account and had consented to a different version of the User Agreement, users were given an opportunity to opt out of the mandatory arbitration provision (Dkt. #10, Exhibit 1 ¶¶ 11, 15). *See Mikkilineni v. PayPal, Inc.*, No. N19C-05-123, 2021 WL 2763903,

at 11 (Del. Super. Ct. Jul. 1, 2021) (finding that subjective intent about wanting to arbitrate is irrelevant because plaintiff did not opt out when the option was available). Any accounts created after that provision was enacted were given thirty (30) days from the day their accounts opened to provide written notice to opt out of the mandatory arbitration provision (Dkt. #10, Exhibit 1 ¶ 20). Ryan did not opt out of the arbitration provision for either account (Dkt. #10, Exhibit 1 ¶ 20). The evidence is clear that both Signatory Plaintiffs continued to use the PayPal accounts after the August 2012 and 2020 amendments were enacted which, consistent with the language of the change of terms provision, constitutes acceptance of the amendment with the relevant mandatory arbitration provision. *See Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, No. 17-CV-1542, 2018 WL 2933608, at *5–*6 (N.D. Ill. June 12, 2018) (discussing almost identical facts to this case where one plaintiff accepted PayPal's User Agreement in 2004 and failed to opt out to the 2012 amendment and how she was bound by the arbitration provision as a result). The Court finds that the arbitration provision is valid and enforceable against the Signatory Plaintiffs.

### B. Non-Signatory Plaintiffs

As to the Non-Signatory Plaintiffs, PayPal argues that they are bound by the arbitration clause under directs benefits estoppel (Dkt. #10 at p. 13). The Court agrees. In conducting this analysis, the Court will apply Delaware law.

A non-signatory to a contract cannot be bound to arbitrate unless it is bound "under traditional principles of contract and agency law." *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resib Intermediates, S.A.S.*, 269 F.3d 187 (3d Cir. 2001). Direct benefits estoppel can bind a non-signatory to an arbitration clause when that non-signatory has reaped the benefits of a contract containing an arbitration clause. *Griswold v. Coventry First LLC*, 762 F.3d 264, 272 (3d Cir. 2014) (using the term "equitable estoppel" instead of direct benefits estoppel).

This is usually decided under a "knowingly exploits" theory, where a Court is asked if the non-signatory has embraced the contract, and is knowingly exploiting the relevant contract in one of two ways: (1) by knowingly seeking and obtaining direct benefits from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that contract or asserting claims that must be determined by reference to that contract. *Id.* (citing *Noble Drilling Services, Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010)).

The Court finds that in this case, JLR Global is asserting claims that must be determined by reference to the User Agreement. In its complaint, JLR Global points out that the User Agreement failed to include a certain provision that it "should have disclosed" and that all of PayPal's conduct occurred because of its incorrect finding that Ryan violated PayPal's Acceptable Use policy (Dkt. #9 at pp. 3, 6).[2] Additionally, although there are eight named plaintiffs in this case, the reason they are all suing PayPal is because they are all operated by Ryan. This entire case is about Ryan, including both of her PayPal accounts and her reputation. In deciding this case, a question that will eventually need an answer is whether, based on Ryan's own actions, PayPal's "justification for its termination of the [User] [A]greement was a factually incorrect claim" (Dkt. #9 at p. 3). The Court finds that under direct benefits estoppel, the non-signatories may be included in the mandatory arbitration, assuming the Court finds that it applies to this case, which the Court will later discuss.

---

[2] In JLR Global's Complaint, Count One is asserted as "Defendant's Violation of 15 U.S.C. § 1693(a)(9)" (Dkt. #9 at p. 6). However, the Court does not find a § 1693(a)(9) under the EFTA. Assuming JLR Global is suing under § 1693(h)(a), a requirement under that statute is that the electronic fund transfer is "in accordance with the terms and conditions of an account." Therefore, the User Agreement would need to be referenced if that is the proper statute for Count One, and the Court comes to the same conclusion.

### C. Survivorship

The final question that the Court must answer in the affirmative for the first step of this analysis is whether the relevant arbitration provision applies in this case, as PayPal has already surrendered the accounts of the Signatory Plaintiffs. JLR Global argues that because PayPal repudiated the User Agreement, they should not be allowed to utilize contractual provisions of an agreement that they terminated. The Court disagrees.

The parties discuss the applicability of *Litton Fin. Printing Division v. N.L.R.B* in their briefing (Dkt. #18 at pp. 5–6; Dkt. #19 at p. 5). 501 U.S. 190 (1991). In *Litton,* the Supreme Court made clear that an agreement to arbitrate may survive the expiration of the agreement, assuming that the post-term dispute arises out of the contract. *Id.* at 205–06. However, as JLR Global points out, the contract in this case did not expire, it was terminated by PayPal. In *Litton*, the Supreme Court mentions a previous decision in which the Supreme Court has explicitly stated that certain contractual provisions, such as an arbitration provision, may survive in some cases in order to enforce duties arising under the contract. *Id.* at 208 (citing *Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionary Workers Union, AFL-CIO*, 430 U.S. 243 (1977)). However, the Supreme Court has also ruled that, as a matter of substantive federal arbitration law, an agreement to arbitrate is severable from the remainder of the contract. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006); *Fairstead Captial Mgmt. LLC v. Blodgett*, ___ A.3d. ___, No. 2022-0673, 2023 WL 115540, at *13 (Del. Ch. Jan. 6, 2023). Numerous courts have since recognized that because of the two rules previously discussed, an arbitration provision survives termination. *See e.g.*, *BBVA Compass Inv. Sols., Inc. v. Brooks*, 456 S.W.3d 711, 718 (Tex. App.—Fort Worth 2015, no pet.); *Lee v. Deng*, 72 F. Supp. 3d 806, 808 (N.D. Ohio 2014) (stating that the arbitration provision survives termination "unless the contract expressly provides otherwise"); *Goshawk Dedicated v. Portsmouth Settlement Co. I*, 466 F. Supp. 2d 1293, 1300 (N.D. Ga. 2006).

The Court concludes that the arbitration provision survives the terminations of the Signatory Plaintiffs' PayPal accounts for this case. The Court points out that there is no specific language in the arbitration provision that states it does not survive the termination of the agreement and that the disputes surround PayPal's termination of the two relevant accounts and a potential section that could have been included in the User Agreement. Therefore, the Court finds that the provision survives the terminations. The Court has answered in the affirmative as to all three questions, therefore, there is a valid arbitration clause that can be enforced in this case. The Court will now turn to the second step in the framework for granting a motion to compel arbitration—whether the dispute is covered by the language in the arbitration agreement. *IQ Prods.*, 871 F.3d at 348.

## II.  Arbitration Agreement Covers This Dispute

The Court agrees with PayPal that the arbitration provision covers the current dispute. *See Cheng v. PayPal, Inc.*, No. 21-CV-03608, 2022 WL 126305, at *3 (N.D. Cal. Jan. 13, 2022) (finding arbitration provision that has exact same language as current provision covers dispute similar to the present case). For the question of scope of an arbitration agreement, the Court is governed by federal substantive law. *Graves v. BP Am., Inc.*, 568 F.3d 221, 222 (5th Cir. 2009). The FAA mandates that when there are doubts about the scope of arbitration, those doubt should be resolved in favor of arbitration. *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000).

Here, the arbitration agreement uses expansive language, which courts have routinely upheld (Dkt. #10 at p. 6) ("This Agreement to Arbitrate is intended to be broadly interpreted."). *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (describing Section 2 of the FAA); *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067–68 (5th Cir. 1998). The specific language covers "all disputes or claims that have arisen or may arise between you and PayPal" and states that they "shall be resolved exclusively through final and binding arbitration,

rather than in court" (Dkt. #10 at p. 6).  The current lawsuit has arisen between Ryan and PayPal. JLR Global argues that its claims are wholly based on PayPal's conduct after the fact, but the Court disagrees.  Surely, a disagreement about PayPal's decision to terminate an account would fall under a dispute or claim that "may arise" at the time of signing, as well as reference to what should have been included in the User Agreement (Dkt. #9 at p. 6).  PayPal's conduct that JLR Global refers to is sufficiently intertwined with the termination of the Signatory Plaintiffs' accounts. Accordingly, the arbitration provision covers this dispute.

The Court will stay the current lawsuit while the parties engage in arbitration. 9 U.S.C. § 3. Additionally, because the Court has rendered a decision on the pending arbitration motion, there is no need to stay discovery, as requested in the other pending motion.  The issue is now moot.

## CONCLUSION

It is therefore **ORDERED** that the Defendant's Motion to Compel Arbitration and to Dismiss, or in the Alternative, to Stay this Action Pending Arbitration (Dkt. #10) should be **GRANTED**.

It is further **ORDERED** that all litigation in the present lawsuit is stayed pending arbitration.

It is further **ORDERED** that Defendant's Motion to Stay Discovery (Dkt. #20) should be **DENIED as moot**.

**IT IS SO ORDERED.**
 SIGNED this 15th day of March, 2023.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

13