IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

JLR GLOBAL, LLC, JENNA RYAN
REALTY, LLC, JENNA RYAN REAL
ESTATE. LLC, FIRST PLACE REAL
ESTATE, SELFLOVEU, LLC, THE JENNA
RYAN SHOW, DOTJENNA, and JENNIFER
RYAN,

    Plaintiffs,

v.

PAYPAL INC.,

    Defendant.

CIVIL ACTION NO.: 4:22-cv-559

JURY TRIAL DEMANDED

**"Motion for Reconsideration Based on New Evidence of the
Prohibitive Costs to Arbitrate and Impossibility of Performance of the Order"**

Plaintiffs respectfully ask the Court to reconsider the previously entered "Order to Arbitrate" on March 15, 2023. Notwithstanding Plaintiffs' diligent efforts, the Court's Order creates an impossibility of performance due to the prohibitive costs to arbitrate, and constitutes the denial of due process of law. Plaintiffs have discovered New Evidence that proves that the ordered arbitration is cost prohibitive as opposed to accessing the court; and that the costs to arbitrate are so high that Plaintiffs are prevented from exercising their statutory right to vindicate their claims. It is impossible for Plaintiffs to access arbitration, and therefore the order denies Plaintiffs' their constitutional right to access "Open Courts" and "Remedy by Due Course of Law," The Texas Constitution, Article 1, Section 13. (Feb. 15, 1876.)

This case involves serious misconduct by Defendant against Plaintiffs, who are consumers and who were clients of the Defendant and who trusted the Defendant with their private financial information. The agreement between the Defendant and the Plaintiffs was breached by the Defendant in an unprecedented way–directly to the mainstream media in an illegal press release about Plaintiffs without due process. Defendant canceled Plaintiffs' account blatantly, disparagingly and publicly irrespective of its agreement with Plaintiffs or

its own privacy policies. State and federal laws were broken, the contract was breached, Defendant violated its own policies and made false accusations against Plaintiffs–these accusations were repeated among the mainstream media and Plaintiffs were attacked publicly and viciously without recourse—and Defendants actions sparked widespread cancellations of Plaintiffs accounts to occur, and that caused Plaintiffs to have to go into hiding and and caused extreme emotional and financial damages to Plaintiffs. This is a public policy concern.

Defendant inflicted massive injury on Plaintiffs personally and professionally. The claims in this case are unprecedented and the costs to arbitrate these claims are equally extreme due to the nature of the misconduct and damages.

No one could have imagined when Plaintiffs signed up to use Defendant for small financial transactions that the Defendant would violate its privacy policies, breach the user agreement and share private financial information of Plaintiff with the worldwide media; and that the personal, private information would go viral around the world and cause mobs of people to attack Plaintiff calling her a grifter, con and a fraud. This is not a matter of dispute, this is public information and visible online to this day.

Plaintiffs did not believe when they signed up to use Defendant's services that they would be bound to an eternal arbitration agreement–no matter what harm was inflicted upon them–and that the cost to do so would start at $350,000. That would have been impossible for Plaintiffs to do–(like agreeing to take a rocket ship to the moon). How can the Plaintiffs contract to do the impossible?

Plaintiffs have discovered through rigorous pursuit of the arbitration process since the arbitration was ordered, that arbitration is out-of-reach due to the extremely high cost to arbitrate. The upfront fees required to be paid by Plaintiffs for the arbitration of these extreme claims and unprecedented misconduct is astronomical. Due to the facts of this case, the cost to arbitrate is extraordinarily high and the Court must recognize the impossibility of the Plaintiffs to perform as ordered, and respect the Plaintiffs right to be heard in court where there are no "arbitration fees," and in court where the attorneys fees are contingent upon success of the action. Plaintiffs should not be barred from vindicating their claims based on their socio-economic status.

Due to the inability of Plaintiffs to pay the costs of arbitration, the arbitration agreement is void, unconscionable and unenforceable.

**(1) <u>The Cost to Arbitrate this Case is Cost Prohibitive for Plaintiffs</u>**

Since Defendant's Motion to Arbitrate was granted, Plaintiffs have discovered that the costs to arbitrate are too high for the Plaintiffs to pay, especially in light of the disparity of resources between the parties, and the complexity of the claims. This New Evidence about the steep costs associated with Plaintiffs case was unknown to Plaintiffs' prior to being ordered into arbitration, and was discovered only after the arbitration was ordered. This New Evidence was also unknown by Plaintiffs when they entered into the Contract of Adhesion with Defendant almost 20 years ago by clicking the "Accept" button on Defendant's website. This new evidence proves that Plaintiffs are barred from due process due to the high costs associated with: (I) Attorneys Fees, and (II) Arbitration Fees.

    I. <u>Attorneys Fees</u>

While this case was in federal court, as requested by Defendant, Plaintiffs had competent legal counsel on a contingency basis and did not pay for legal fees up-front; Plaintiffs were only liable for attorney's fees upon the successful conclusion of the jury trial. However, once the case was ordered to arbitration, Plaintiffs lost their legal counsel. The Plaintiffs' attorney could not arbitrate on a contingency-fee basis because the costs to arbitrate are much higher than the costs to litigate in court. Plaintiffs did not have the resources to pay up-front and ongoing retainer fees to effectively arbitrate this complex case.

Plaintiffs made every effort to secure legal representation for the ordered arbitration on a contingency basis, but were unsuccessful. Plaintiffs attempted diligently and extensively to find a fee-based attorney to assist in the arbitration, but the required costs of the attorney fees surpassed Plaintiffs' yearly income. Plaintiffs are now forced to represent themselves because no attorney will take their case on a contingency basis.

Plaintiffs <u>are able</u> to secure legal representation on a contingency basis if Plaintiffs are allowed to stay in court, but not if Plaintiffs are required to arbitrate. Plaintiffs cannot vindicate their claims if forced into arbitration. Consider the following New Evidence:

    A. Plaintiffs' attorney, Ron Burns, withdrew from this case once the case was ordered to arbitration, and the reason for the withdrawal was Plaintiffs' inability of Plaintiffs to pay arbitration costs

and attorneys fees. (**Exhibit A** - *Letter from Plaintiffs' former Attorney, Ron Burns, giving arbitration fees as reason for termination of representation.*)

B. Plaintiffs' Representative contacted 30+ attorneys, and spent over 100 hours of time diligently seeking representation for the ordered arbitration, but no attorneys were willing to handle the arbitration of this complex case on a contingency basis. A list of all the attorneys contacted can be provided.

C. Only two attorneys agreed to take Plaintiffs' case to arbitration on a retainer-fee basis, and the estimated fees required by each was $250,000 to $350,000, respectively, which is beyond Plaintiffs ability to afford in this lifetime. (**Exhibit B** - *Copies of Correspondence from two attorneys who agreed to take the case and their estimate of the fees required up front*)

D. Plaintiffs' applied for financing for the arbitration, but two such financing companies rejected Plaintiffs' application. (**Exhibit C** - *Denial letters for litigation financing*).

E. Plaintiffs sought representation from Pro Bono and free legal assistance and political organizations, but were denied representation. (**Exhibit D** - *Correspondence with various organizations declining representation*)

F. Plaintiffs have reached out to lawmakers, Senators and the Texas Attorney General, as well as the Consumer Financial Protection Board. Plaintiffs have exhausted all resources in their quest to retain adequate counsel. (**Exhibit E** - *Complaint with Texas AG and CFPB and Defendant Response*)

G. Defendant has declined to pay for Plaintiffs' attorneys fees. (**Exhibit F** - *Letter from Defendant attorney declining Plaintiffs request for Defendant to pay attorneys fees*)

H. Plaintiffs have secured legal representation on a contingency fee basis if and only if Plaintiffs are allowed to stay in court for a trial-by-jury. (**Exhibit G** - *Representation Agreement with Attorney on contingency basis for this action if it is litigated in court*)

Plaintiffs do not have legal representation for the ordered arbitration, and lack the experience, education, knowledge, expertise and resources necessary to exercise their rights to pursue their claims. Plaintiffs cannot

successfully represent themselves in arbitration without legal counsel. Legal counsel is inaccessible in the arbitration format, but accessible if Plaintiffs are allowed due process in court. If required to arbitrate, Plaintiff will be forced to drop their claims against Defendant due to their inability to retain legal counsel for arbitration on a contingency basis, and due to the high cost of arbitration fees.

If Plaintiffs drop their claims due to the high cost of arbitration, then the Defendant will never be held accountable for their actions and Defendant will be emboldened to harm more consumers in the future in the same way they harmed the Plaintiffs. Barring Plaintiffs from vindicating their claims against Defendants due to lack of financial capability will send a message to all financial institutions in the United States that it is okay to share the private financial information of consumers with the mainstream media; and it will show that there are no consequences for harming consumers.

II. Arbitration Fees

Plaintiffs assert that they are unable to afford Defendant's Arbitration Fees, and that such fees are required and not speculative. *Tillman adv. Rheingold Firm*, No. 13-56624, 2016 BL 190432 (9th Cir. June 15, 2016)

    A. Plaintiff filed an arbitration claim with Defendant's arbitration company, AAA, and were able to obtain a financial hardship waiver of fees by the Arbitration Company, (**Exhibit H** - *Claim and Waiver of some Arbitration Fees with the exception of a filing fee*).

    B. Plaintiffs surmise that it is pointless to pay the initial arbitration fees–albeit reduced–if Plaintiffs are unable to afford to cost to retain legal counsel. (**Exhibit I** - *Declaration from Plaintiffs' Representative, Jennifer Ryan regarding financial inability to pay*)

    C. Defendant's Arbitration Company waived a portion of the initial fees required to start the arbitration, however, Plaintiffs were told by the Arbitration Company that Plaintiffs would be responsible for more fees throughout the arbitration process; these are more fees that the Plaintiffs simply cannot afford to pay and that would not be required if Plaintiffs are allowed fair

access to the public court system. (**Exhibit H** - *Correspondence & Waiver from Arbitration Company*)

Due to the steep costs of arbitrating a case of this complexity and magnitude, Plaintiffs are unable to pursue their claims against Defendant as ordered by this court. The financial disparity between Plaintiffs and Defendant, the severity of the claims, and the complexity of damages in this case require high arbitration costs that the Plaintiffs cannot afford. Arbitration of the claims of this case is impossible for Plaintiffs.

### (2) Defendant's Arbitration Agreement is Unconscionable and Unenforceable

Given this new found evidence, it is certain that Defendant's Arbitration Agreement is unenforceable as it fails to provide the minimum guarantees that Plaintiffs can vindicate their statutory rights in a court of law. Plaintiffs are unable to pursue their claims in arbitration according to the Arbitration Agreement, and therefore, must rely on the court to obtain due process under the law.

The US Supreme Court established in the case of <u>Green Tree Financial Corp.-Alabama and Green Tree Financial Corporation, Petitioners v. Larketta Randolph</u>, that the existence of large arbitration costs could preclude a litigant from effectively vindicating their federal statutory rights in the arbitral forum, but held "that the party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." The Plaintiffs, in this Motion to Reconsider, provide concrete evidence that arbitration is cost prohibitive and precludes Plaintiffs from vindicating their claims in arbitration. Insomuch as Plaintiffs are unable to afford the high costs of arbitration against Defendants, and are unable to pursue their claims, Defendant's Arbitration Agreement is unenforceable.

*Tillman adv. Rheingold Firm*, No. 13-56624, 2016 BL 190432 (9th Cir. June 15, 2016) - "Plaintiff Who Could Not Afford to Pay for Arbitration Was Allowed to Pursue Her Malpractice Action in Court."

The Texas Supreme Court ruled on the matter of high arbitration costs preventing a party to pursue their claims in *Houston* ANUSA, *LLC d/b/a AutoNation USA Houston* v. Walter Shattenkirk, 2023,

> The issue … is whether an arbitration agreement is unconscionable, and thus unenforceable, on the ground that the costs associated with arbitration are so excessive they would foreclose the employee from pursuing his claims. The court of appeals held that the agreement is unconscionable

> and affirmed the trial court's order denying the employer's motion to compel arbitration. Because the burden is on the party resisting arbitration to prove unconscionability, and because the evidence does not rise above the speculative "risk" that the employee will actually incur prohibitive costs, we reverse the court of appeals' judgment.

The claimant in the AutoNation case did not prove through evidence that they would incur prohibitive costs, but the court held that:

> "[T]he theory behind unconscionability in contract law is that courts should not enforce a transaction so one-sided, with so gross a disparity in the values exchanged, that no rational contracting party would have entered the contract." In re Olshan Found. Repair Co., 328 S.W.3d 883, 892 (Tex. 2010) (citing Restatement (Second) of Contracts § 208 cmt. b (Am. L. Inst. 1981)). In limited circumstances, the cost of arbitration can render an agreement to arbitrate unconscionable. See Poly-Am., 262 S.W.3d at 356 (holding that arbitration provisions in an employment agreement "that operate to prohibit an employee from fully and effectively vindicating statutory rights are not enforceable").

AutoNation goes onto state:

> A party opposing arbitration on the ground that the prohibitive cost of arbitrating renders the agreement to do so unconscionable has the burden of proof. Olshan, 328 S.W.3d at 893 (citing Green Tree Fin. Corp.–Ala. v. Randolph, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)). To meet that burden, the party must present "some evidence" that it "will likely incur arbitration costs in such an amount as to deter enforcement of statutory rights in the arbitral forum." Id. (quoting Poly-Am., 262 S.W.3d at 356) (emphasis omitted). Pertinent factors include whether "the total cost of arbitration is comparable to the total cost of litigation" and "the claimant's overall ability to pay the arbitration fees and costs." Id. at 894–95.[1] Further, making the required showing entails presenting more than evidence of the "risk" of incurring excessive costs; it requires "specific evidence that a party will actually be charged excessive arbitration fees." In re U.S. Home Corp., 236 S.W.3d 761, 764 (Tex. 2007) (citing Green Tree, 531 U.S. at 90–91, 121 S.Ct. 513); see also Olshan, 328 S.W.3d at 895 ("While we do not mandate that claimants actually incur the cost of arbitration before they can show its excessiveness, parties must at least provide evidence of the likely cost of their particular arbitration, through invoices, expert testimony, reliable cost estimates, or other comparable evidence.").[2]

Factors for this analysis under Texas contract law are: (1) the total costs of litigation compared to the total cost of arbitration; (2) whether that disparity is so great as to deter the bringing of claims (3) the actual cost

of arbitration compared to the total amount of damages the claimant is seeking; and (4) the claimant's overall ability to pay the arbitration fees and costs. Evidence supported finding that the agreement was unconscionable.

In this case, Plaintiffs have shown new evidence that proves (1) that the total costs of litigation are affordable to the Plaintiffs, (2) whereas the cost to arbitrate is out-of-reach for Plaintiffs. (3) the cost to arbitrate is excessive due to the outrageous actions taken against Plaintiff and subsequent damages as well as the disparity of resources between the parties; (4) Plaintiffs are unable to access arbitration due to their inability to pay the arbitration fees and costs associated with arbitration.

### (3) Defendant's Arbitration Agreement is Void

Defendant's Arbitration should be rendered Void based on the "Impossibility of Performance Doctrine." Plaintiffs have exhausted their resources in the pursuit of the arbitration of their claims, but Defendant's Arbitration Agreement requires Plaintiffs do the impossible. [Transatlantic Financing Corp. v. United States, 363 F.2d 312 (D.C. Cir. 1966)]

According to the "Impossibility of Performance Doctrine":

1. <u>A contingency must have occurred</u> - Plaintiffs did not know that the Plaintiffs would one day have claims against Defendant that would be impossible to claim due to the extremely high cost of Arbitration.

2. <u>The risk of the unexpected occurrence must not have been due to the negligence of either party</u> - It is not the Plaintiffs or the Defendant's fault that the damages in this case were so high and extreme that it caused the cost of arbitration to be so high.

3. <u>The circumstance must have rendered performance under the contract commercially impracticable</u>. Plaintiff is unable to afford to arbitrate a case of this magnitude, therefore, Defendant's Arbitration Agreement is commercially impracticable.

It is impossible for Plaintiffs to arbitrate this matter, while it is possible for Plaintiffs to vindicate their claims in court.

### (4.) Defendant's Arbitration Agreement is Unconscionable

According to Defendant's User Agreement, Arbitration is presented as beneficial to both parties, however, in this cause of action, Plaintiffs are barred from accessing the arbitration process due to the magnitude of the claims and Plaintiffs lack of resources. Defendant's User Agreement offers grossly oppressive and unfair terms that are impossible for the Plaintiffs to fulfill.

> **PayPal User Agreement**
>
> *Arbitration is more informal than a lawsuit in court. Arbitration uses a neutral arbitrator or arbitrators instead of a judge or jury, and court review of an arbitration award is very limited. However, the arbitrator can award the same damages and relief on an individual basis that a court can award to an individual.*

Defendant's Arbitration Agreement concedes to the possibility of arbitration being cost prohibitive compared to the cost of accessing the court for purposes of pursuing litigation. Defendant's Arbitration Agreement offers to pay arbitration fees if granted by the arbitrator, but <u>does not</u> address the high cost of attorneys fees and other costs required to arbitrate complex claims. The language in the Arbitration Agreement is misleading. There are more costs required for the Plaintiff in arbitration, and potentially substantially less costs for the Defendant. The User Agreement is one-sided and oppressive.

Plaintiffs would not have agreed to give up their right to pursue claims in court had Plaintiffs been aware that the claims against Defendant would require upwards of $350,000 to obtain due process. Plaintiffs did not have a choice to negotiate terms for this agreement, and therefore this is an agreement of adhesion, and the

terms of the Arbitration are impossible for the Plaintiffs to fulfill, therefore the agreement must be found to be unconscionable, unenforceable and void.

> **Costs of Arbitration Section of the Arbitration Agreement**
>
> *If the value of the relief sought is more than $10,000 and you are able to demonstrate that the costs of accessing arbitration will be prohibitive as compared to the costs of accessing a court for purposes of pursuing litigation on an individual basis, PayPal will pay as much of the AAA or arbitrator fees as the arbitrator deems necessary to prevent the cost of accessing the arbitration from being prohibitive.*

Defendant's Arbitration Agreement makes no provision for exorbitant Attorneys Fees required for arbitration of major claims against Defendant, giving the Plaintiffs (and consumers) a false-sense-of-security when the original agreement to arbitrate was initiated. The lack of provision for arbitration fees as well as attorneys fees renders the arbitration of major claims against Defendant impossible for the average consumer, and therefore unconscionable, as it fails to protect the interest of both parties.

Thompson v. Glob. Fixture Services, Inc., No. CV H-22-0484, 2022 WL 3693453 (S.D. Tex. Aug. 25, 2022) (FSLA). An arbitration agreement may render a contract unconscionable if the existence of large arbitration costs could preclude a litigant from effectively vindicating his or her federal statutory rights in the arbitral forum.

### (5) Conclusion

In conclusion, based on this New Evidence, it is obvious that Plaintiffs cannot exercise their statutory right to pursue their claims in arbitration due to the steep costs of the arbitration process. The costs to arbitrate this case are extremely high due to the magnitude of the claims, the disparity of resources among the parties and the damages caused by Defendant. Plaintiff is unable to pay for arbitration not only because the Defendant

caused Plaintiffs financial damages, but also because the costs for the arbitration of their claims is extremely high and out-of-reach for Plaintiffs to pay. Plaintiffs have discovered that they are able to secure legal counsel on a contingency basis if they are allowed to stay in court, but that they would be required to pay a $350,000 retainer if they are forced into arbitration, an amount which is out of Plaintiffs ability to pay. Plaintiffs cannot afford to pay the arbitration fees or the attorneys fees required to arbitrate their claims, and it is therefore impossible for Plaintiffs to continue arbitration. Plaintiffs need access to the courts to exercise their statutory rights to vindicate their claims through due process of law.

Ordering Plaintiffs to arbitrate their claims in this cause is the same as deciding the case without hearing the merits and dismissing the case before it is resolved as Plaintiffs now realize that they cannot afford arbitration. The Order to Arbitrate strips Plaintiffs of their basic right to be heard and obtain justice.

If Plaintiffs are unable to pursue their claims against Defendant, consumers at large are at risk of having their privacy violated in the future.

Plaintiffs have the right to pursue their claims in this court with an attorney who is willing to handle this case on a contingency basis if the right to due process is honored.

For the reasons set forth herein, and the new evidence obtained, Plaintiffs respectfully submit that the Order granting Defendant's Motion to Arbitrate be reconsidered and

DENIED in its entirety.

November 3, 2023

Respectfully Submitted,

By: Jennifer L. Ryan
469-491-0587
jennaryanrealty@gmail.com

PRO SE

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed in person on November 6th, 2023, electronically in compliance with Local Rule CV-5. As such, the foregoing was served on all counsel of record who have consented to electronic service. Local Rule CV-5. Pursuant to Fed. R. Civ. P. 5 and Local Rule CV-5, all others not deemed to have consented to electronic service will be served with a true and correct copy of the foregoing by email, on this the 6th day of November, 2023.

/s/ Jennifer L. Ryan