IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION



FILED
MAY 24 2024
Clerk, U.S. District Court
Eastern District of Texas

JLR GLOBAL LLC, et al

    Plaintiffs,

v.

PAYPAL INC.,

    Defendant.

CIVIL ACTION NO.: 4:22-cv-559
JURY TRIAL DEMANDED

DKT 30

**SUPERSEDING EXHIBIT "I"**
**DECLARATION OF JENNIFER RYAN**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

Pursuant to 28 U.S.C. § 1743, I, Jennifer Ryan, declare from my personal knowledge that the following facts are true:

1. "My name is Jennifer Ryan. I am over 18 years of age and reside in the State of Texas. I am a Plaintiff in this cause-of-action. I am representing myself Pro Se. I submit this Declaration in support of my Motion to Reconsider which has been filed by me before this Court. The information in this Declaration supports my knowledge of the facts and evidence submitted in this case and with the Motion to Reconsider. I have personal knowledge of the facts in this Declaration and could competently testify to them if I am called as a witness.

**Superseding Exhibit "I"**
**Declaration of Jennifer Ryan – Page 1**

2. I was a PayPal customer for several years for nominal financial transactions. I trusted PayPal to protect my private information. I used PayPal as a convenient payment processor and I trusted PayPal to keep my personal financial information private from third parties.

3. On January 21, 2021, after posting a link for a fundraiser on Twitter and raising $200, PayPal canceled my account via email with no explanation. I was mortified that a billion dollar company like PayPal would care about me personally. When I received the email that I was canceled by PayPal, I could feel the blood rushing out of my body, as if I were being pummeled by rocks. It is difficult to explain the fear and trepidation that I felt in that one moment and beyond as a result of PayPal's blatant dismissal of me. I feared that PayPal's cancellation of my account would destroy the support I was receiving in the community from like-minded people. I feared that I would be unable to conduct business in society and that I would be canceled by other companies and financial institutions. I vowed to my mother, (now deceased), that I would not tell anyone about this cancellation. I wanted to keep it quiet, as it was humiliating and excruciatingly painful to be called out personally by a billion dollar corporation. I was very afraid of how this would impact my ability to conduct business in society and vowed not to tell a soul for my own safety.

4. Unfortunately PayPal had another agenda for my personal and professional well being. PayPal took action to publicize the cancellation of my account, leading to my public humiliation. Within approximately 30 minutes after I received the email from PayPal stating that the corporation had canceled my account, I received an email from CNET, a mainstream media outlet that caters to the tech community. The CNET reporter asked me for a comment by email. PayPal had informed the media that PayPal had canceled me. Again, I was mortified. I couldn't believe that the information about my financial relationship with PayPal, and their banishment of me, was now being distributed to the mainstream media.

5. Within one hour after PayPal abruptly canceled my account, the news of my mortification was spread from CBS News, to all over the world. Headlines read, "Real Estate Agent, Jenna Ryan, Booted from

**Superseding Exhibit "I"**
**Declaration of Jennifer Ryan – Page 2**

PayPal." Not only was the media singling me out personally, but also my businesses and my profession. Over 28 news outlets reported on the cancellation of my account, including, but not limited to The New York Times, The Washington Post, The Daily Mail, The Daily Beast, and many others–while also mentioning that the terrorist threat in America was high. I am not a terrorist, however, due to the media coverage, I was made to seem like a horrible person. I was attacked publicly, online, offline and ostracized from society. I could no longer raise any money in support of my cause. I was annihilated in the public square, serving as an example to anyone who dares to speak freely and have differing opinions from PayPal. The ramifications of PayPal's actions against me were extreme. I was attacked mercilessly online, and I had to go into hiding in plain sight, change my name and close my business. I cried often and experienced the psychological effects of ostracization and public humiliation.

6. The next day after PayPal canceled me, I was booted from many other companies, platforms online and financial institutions. I was booted from Facebook on 1/22/2021 (the day after PayPal's press release sharing my private financial data), which had been a major source of social support, as well as income production for me and my businesses. I was also booted from Instagram, Zillow, NextDoor and many other tech companies based in Silicon Valley. I was booted from dating sites, including Hinge.com, Match.com and more. Every day of my life I live with the pain of being canceled from a billion dollar tech giant and the copycat actions of other billion dollar tech companies against me.

7. I filed a lawsuit against PayPal presenting claims related to the sharing of my private financial information with the media without my permission. I never cared why PayPal canceled me–I was most concerned with the fact that PayPal canceled me publicly–and then told the world media that they canceled me. That was the crux of my issues. Being canceled for any reason by PayPal is bad enough, but to have said cancellation publicized all over the world was what caused all the damages to me and my life and my businesses. I wanted to get justice for the horrible actions taken against myself, my livelihood and my businesses.

8. Unfortunately, my attorney, Ron Burns, was forced to withdraw from my case immediately after the case was forced into arbitration due to the upfront fees and expenses required to arbitrate my claims. I had competent representation on a contingency basis when my claims were before this Court, however, I lost said representation shortly after my case was forced into arbitration. A few weeks or so after my claims were forced into arbitration, Ron Burns withdrew from representing me in the case. I was told by Burns that the partners at his law firm, Fresh IP, would not allow him to arbitrate the case due to the expense relative to arbitration. I did not have the financial resources to pay an upfront retainer which would be required for arbitration. So I set out to find another attorney to represent me.

9. I diligently sought representation for the arbitration of my case, reaching out to over 30 different attorneys in effort to comply. After my attorney, Ron Bums, was forced to withdraw from my case due to the cost of arbitration that I could not afford to pay, I contacted the following attorneys and spoke to the attorneys and/or their staff, and in most cases, presented them with case pleadings and met with these attorneys over the phone and/or in person. I have had multiple discussions with most of these attorneys regarding my case in the diligent attempt to secure legal counsel in a way that I could afford.

10. Following is a list of some of the attorneys contacted by Plaintiff in effort to find representation for the ordered Arbitration, but who were unable to handle the case on contingency in arbitration.     I spent months of my life in an attempt to find an attorney to represent me in arbitration–to no avail.

---

List of Some but Not All Attorneys Contacted by Jennifer Ryan to Handle Arbitration Against PayPal

1. Tom Shaw - Phone conversations, meetings, did not agree to take my arbitration case.
2. John Pierce - Phone conversations, gave an estimate for retainer of $350,000 and agreed to take my arbitration case, expressed interest in representing me on appeal if necessary.
3. Carl Steinbeck - Several phone conversations, declined arbitration representation, agreed to represent me in federal jury trial and assisting on appeal if necessary.
4. Barry Silberman - Several phone conversations, declined arbitration representation, agreed to assist on appeal, if necessary.
5. Mark Grosso - Phone Consultation, Personal Meeting, Email Correspondence, currently representing me, declined arbitration representation.

---

**Superseding Exhibit "I"**
**Declaration of Jennifer Ryan – Page 4**

6. Jules Slim - Phone conversations, email conversations, reviewed pleadings, personal meeting, declined arbitration representation.
7. Harmeet Dhillon - Review of pleadings, phone consultation with staff, declined arbitration representation.
8. Blake Mattingly - Review of pleadings, phone consultation, personal meeting, declined arbitration representation.
9. Stuart L. Cochran - Phone consultation, In office meeting, reviewed pleadings, declined arbitration representation.
10. Chris Sullivan - Phone Consultation, declined arbitration representation.
11. Rogge Dunn Group - Discussion with Paralegal, declined arbitration representation.
12. Brian J. Smith - Phone consultation, in office meeting, review of pleadings, declined arbitration representation.
13. Lang Law Firm, PC - Conversation, declined arbitration representation.
14. Josh Dixon - Email conversation, declined arbitration representation.
15. Center for American Liberty - Review of pleadings, email conversation, phone conversation, declined arbitration representation.
16. Claremont Institute - Email conversation, declined arbitration representation.
17. Andrew S. Hicks - Phone Consultation, declined arbitration representation.
18. Josh Bowlin - Phone Consultation, declined arbitration representation.
19. West Mermis - Phone Consultation, declined arbitration representation.
20. Michael E. McCue - Phone Consultation, declined arbitration representation.
21. Luke Gunnsaks - Phone Consultation, text, review of pleadings, referral to other attorneys, declined arbitration representation.
22. Brett Solberg - Phone consultation , declined arbitration representation.
23. Robert Widener - Phone consultation, review of pleadings, in person meeting, emails, declined arbitration representation.
24. Marshal Hoda - Phone consultation, declined arbitration representation.
25. Nowak & Stauch - Phone consultation, declined arbitration representation.
26. Marc Randazza - Phone consultation, declined arbitration representation.
27. Robert Toby - Phone consultation, declined arbitration representation.
28. Tony McDonald - Phone consultation, declined arbitration representation.
29. Paul Sternberg - Phone consultation, declined arbitration representation.
30. Glenn D Tucker - Phone consultation, declined arbitration representation.
31. Wood Edwards - Phone consultation, declined arbitration representation.
32. Kennedy Law - Phone consultation, declined arbitration representation.
33. Joe Sibley - Phone consultation, declined arbitration representation.
34. Lin Wood - Text, declined arbitration representation.
35. Libby Locke - Email & Phone consultation, declined arbitration representation.
36. Matt Davis - Phone consultation, declined arbitration representation.

11. I was finally able to find an attorney who agreed to take my case. Harvard graduate and high-profile attorney, John Pierce agreed to represent me in the arbitration case against PayPal, but in order to do so, Pierce required an up front retainer fee of roughly $350,000 in order to effectively arbitrate my case. The minimum price estimated to handle the arbitration by an attorney willing to take my case was $350,000. https://www.johnpiercelaw.com

12. John Pierce is also considering representing me on appeal of this case before the 5th Circuit, if necessary. This is great news because Pierce has a sterling reputation, and is a winner of many very high-profile cases.

13. Once I found an attorney who would represent me in arbitration, I applied for two litigation financing companies to obtain the funds ($350,000) to follow this Court's order and go to arbitration. Unfortunately, I was denied by both.

14. I reached out to non-profit organizations to assist in representing me in this case, as well as to the Attorney General's Office and other government entities in effort to get relief and justice for my case. So far, I am still unable to get representation for arbitration against PayPal without paying $350,000 up front fees and costs.

15. I was able to start the arbitration process with the AAA, and obtained a hardship waiver of fees, but was unable to proceed with arbitration due to lack of representation.

16. Unfortunately, following this Court's Order to Arbitrate has proven impossible for me to do, and I have presented new evidence in my Motion to Reconsider that this order is impossible for me to fulfill.

17. After initially being alerted by an attorney, I researched and found case law showing that if it is cost prohibitive to go to arbitration, then I should be able to litigate my claims in Court. I could file a Motion to Reconsider on the premise that it is impossible for me to arbitrate my case, therefore, I prepared my own Motion to Reconsider.

18. When filing the Motion to Reconsider, I discovered that PayPal is a payment processor for this Court, and became alarmed at the optics of a conflict of interest that such a relationship with Defendant creates

**Superseding Exhibit "I"**
**Declaration of Jennifer Ryan – Page 6**

with my case. I am very concerned that this Court has ongoing financial interest and business relationship with PayPal such that a portion of the Court's own financial standing is benefited by its relationship with PayPal. Furthermore, according to TechReport.com in 2023, over 70% of Americans use PayPal's services, and that would likely include most members of the Court and its staff (as well as their families, if applicable) having personal financial transactions and interests with Defendant. (https://techreport.com/statistics/paypal-user-statistics/)

19. Thankfully, I am able to secure legal representation on a contingency basis if my case is allowed to remain in this Court and if I am allowed to present my claims in the presence of a jury. I have secured contingency legal counsel if I am allowed to stay in Court. There is more than one attorney willing to take my case if I'm allowed to litigate in Court, and others who are willing to represent me on appeal, however no attorneys will represent me in arbitration for less than $350,000.

20. The unknown arbitration language that the Court decided I must fulfill has shown to be impossible to fulfill because I am unable to secure legal representation due to my lack of resources, and the high upfront costs and fees required to arbitrate. I was not aware of the arbitration agreement. I would never have agreed to go to arbitration if I knew that PayPal would take a personal and public vendetta against me to destroy my businesses, and that it would cost me $350,000 to be represented against them in arbitration. It is impossible for me to proceed in arbitration with my claims against PayPal.

21. I cannot secure an attorney to arbitrate my claims on a contingency basis.

22. I am unable to pay $350,000 in attorneys fees and arbitration costs. My businesses were destroyed after the Defendant's actions against me, and I have been working very hard to reestablish myself financially, however, as of now, my savings and retirement accounts are depleted.

23. The amount of $350,000 is an astronomical amount and completely unaffordable and unattainable for a consumer citizen in my position to pay for arbitration with Defendant, and if I am required to arbitrate, I will have no other choice but to forgo my claims due to lack of funds and resources.

24. I have prepared a timeline of the New Evidence that I have presented in my Motion to Reconsider:

**2023 - 2024 New Evidence Timeline**

April 2023

- Attorney Ron Burns withdrew from representing my case once it was referred to arbitration.

April - June 2023

- Called hundreds of resources and attorneys requesting representation for the PayPal Arbitration spending days, weeks, months trying to find adequate counsel.
- Met with numerous attorneys over the phone and in person to discuss their representation of me in the PayPal arbitration.
- Took notes, spent hours strategizing, planning, networking, trying as hard as possible to secure representation for the PayPal arbitration.
- Sent pleadings, emails and explanations to well over 30 attorneys locally and nationwide.
- Created a marketing flier about my case and sent it to various people and legal organizations, all to no avail. I could not find an attorney willing to arbitrate.

June 2023

- Contacted John Pierce, Attorney and was given an estimate for him to handle the arbitration on contingency for $350,000.
- Applied for financing to handle the arbitration which was denied.

August 2023

- Ability to arbitrate became impossible.
- Experienced extreme frustration and hopelessness.
- Received a call from an attorney who mentioned that there are laws to protect people who cannot afford arbitration.
- Started researching the legal precedent regarding the affordability of arbitration.
- Started drafting the Motion to Reconsider Pro Se.
- Started the arbitration process with the AAA - Referred to Complex Case Side of AAA.
- Applied and received for a Hardship Waiver of fees with the AAA. (Roughly $10,000)
- Secured an attorney, Mark Grosso, to handle my case on a contingency basis if the case stays in court.

**Superseding Exhibit "I"**
**Declaration of Jennifer Ryan – Page 8**

September 2023

- Continued writing Motion to Reconsider Pro Se

October 2023

- Continued writing Motion to Reconsider Pro Se

November 2023

- Filed the Motion to Reconsider Arbitration Pro Se

December 2023

- Attorney, Ron Burns, officially removed from my case by this Court
- Plaintiff, Jennifer Ryan, recognized by this Court as Pro Se Litigant
- Attorney, Mark Grosso, entered as counsel of record for Business Plaintiffs

Jan - May 2024

- Plaintiff, Jennifer Ryan, Pro Se, awaits the Judge's decision on the Motion to Reconsider
- Plaintiff files Superseding Declaration with this Court in proper format

Further, Declarant sayeth not."

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 24, 2024.

*Jennifer Ryan* (signature)
Jennifer Ryan

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed in person on May 24, 2024, electronically in compliance with Local Rule CV-5. As such, the foregoing was served on all counsel of record who have consented to electronic service. Local Rule CV-5. Pursuant to Fed. R. Civ. P. 5 and Local Rule CV-5, all others not deemed to have consented to electronic service will be served with a true and correct copy of the foregoing by email, on this the 24th day of May, 2024.

*/s/ Jennifer Ryan*
Jennifer Ryan

**Superseding Exhibit "I"**
**Declaration of Jennifer Ryan – Page 10**